The Court affirmed the judgment, Daggett and Edmond, *Asts.* dissenting, on the ground, that, for aught which appeared, *Turrell* was a man of property, and the petitioner had a clear and adequate remedy against him, for the fraud, in an action at law.

1803.

BEARDSLEY
*v.*
BENNETT.

## Tweedy *v.* Picket.

In the Court below,

TWEEDY and HOWARD, *Plaintiffs;* THOMAS PICKET, *Defendant.*

THIS was an action of ejectment.

The plaintiffs claimed title by the levy of an execution; the defendant, by a conveyance from *Ebenezer Picket.*

The jury, found a special verdict, from which it appeared, that on the 13th of September, 1796, *Seymour Picket,* being seized of the demanded premises in fee-simple, conveyed the same to *Ebenezer Picket,* who immediately entered, and, *on the 30th of March,* 1799, *at half past two, in the afternoon,* procured his deed to be recorded, and that on the 8th of October, 1796, *Ebenezer Picket* conveyed the premises to the defendant, who immediately entered and continued in possession. It also appeared, that on the 29th of March, 1799, the plaintiffs attached the premises as the property of *Seymour Picket,* which attachment was recorded *on the 30th of March,* 1799, *at half past eleven, in the forenoon;* that the plaintiffs afterwards obtained judgment against *Seymour Picket,* took out execution, and levied the same on the premises; that the plaintiffs appointed one appraiser, and the execution debtor neglecting to appoint any, the

In order to make out a title to land, by the levy of an execution, it must be shewn, that the appraisers were *indifferent* free-holders, and that they were *sworn* according to law.

An appraiser, who is uncle to the creditor's wife, is not " indifferent" within the meaning of the statute.

HARVARD LAW LIBRARY

justice appointed the other two, one of whom was *Thomas P. White*, the uncle of *Howard's* wife; and that the premises were, by said appraisers, set off to the plaintiffs, in satisfaction of their execution. It was not found, by the special verdict, that any oath was administered to the appraisers. The Superior Court adjudged the law to be, that the plaintiffs had not shewn a good title, and rendered judgment for the defendant.

While this case was on trial to the jury, the defendant offered parol evidence to prove the relation subsisting between the appraiser and creditor, which was objected to, by the plaintiffs, and admitted, by the Court. A bill of exceptions was thereupon filed.

*Smith*, (of Woodbury) and *Gould*, for the plaintiffs.

*Ingersoll* and *Whittlesey*, (of Danbury) for the defendant.

In support of the judgment below, it was contended,

1. That the appraiser, being uncle by marriage to one of the plaintiffs, was not " indifferent," within the meaning of the statute. (a)

2. That as it did not appear, by the special verdict, that the appraisers were sworn, the plaintiffs had failed of making out a title, by virtue of the execution; and, of course, had received no legal injury, by the judgment of the Superior Court, in admitting the testimony, if it were erroneous.

On the other side, it was urged, that the justice is, by

(a) *Stat.* 175.

law, the sole judge of the qualifications of the appraisers; and having appointed them, no court can revise his proceedings. In such case, the justice acts judicially, and, therefore, conclusively. He may be mistaken in the facts; but those facts cannot afterwards be questioned.

BY THE COURT, TRUMBULL, *Gov.* not judging, HILL-HOUSE, *Ast.* absent, TREADWELL, *Lt. Gov.* ELLSWORTH, CHESTER, ALLEN, and EDMOND, *Asts.* dissenting,

The judgment was affirmed.

## Benton *v.* Benton.

### In the Court below,

SARAH BENTON, *Petitioner;* JOHN BENTON, *Respondent.*

THIS was a petition to the Superior Court for a divorce.

The case, as stated in the petition, and found by the Court, was,—That on the 20th of September, 1800, the respondent and petitioner were lawfully married; that previous to their marriage, the respondent professed a sincere attachment to the petitioner; that she confided in his professions; that his professions, however, were bottomed upon fraud and deceit; that before the marriage, she had been begotten with child by him; that she had prayed out process against him, agreeably to the provisions of the statute concerning " bastards and bastardy"; that his body had been arrested, and was, at the time of the marriage, holden under arrest; that in that situation, and for the sole purpose of avoiding said process, he formed the fraudulent and wicked design of

The term *frau-dulent contract,* in the statute concerning divorces, includes those causes only, which render the marriage unlawful from the beginning. The Superior Court are not vested with such a discretion, in cases of divorce, that their decree may not be revised in error.