WILLIAM C. GREENE vs. THE TOWN OF EAST HADDAM.

Slight deviations in a route prayed for in an application for the laying out of a highway, are not important, so long as the termini are substantially the same as those prayed for.

And it does not affect the case that the application specifies a surveyed route from one terminus of the proposed road to the other.

Where an application specifies a certain point on an existing highway as a terminus, the committee have power, in their discretion, to make the new road of increased width at the terminus, with two diverging tracks, so as to make it more convenient for the public to pass from one road to the other ; and this although it may leave a small triangular piece of land between the diverging tracks which is not used.

The receiving by the committee of special hospitality or other attentions from persons interested in favor of or against the laying out of a road, while the matter is on trial, is objectionable as tending to create dissatisfaction in the defeated party, even where no effect has been produced upon the minds of the committee.

But where the court below found that there was no improper conduct on the part of the committee unless it was to be inferred as matter of law from the facts found, it was held that the receiving of certain attentions specified, if not actually improper, could not be so regarded purely as matter of law.

A committee in a highway case specially appointed by the court for the qualifications of the persons composing it, and generally upon the agreement of the parties, is to be considered as more likely to be beyond the reach of petty influences than ordinary jurymen.

After a committee had made its report, laying out a highway and assessing damages to A for a certain piece of land taken, B filed a remonstrance against the acceptance of the report, alleging that he was the owner of the land and should have had the damages awarded in his favor. No question on the point had been made before the committee on the hearing. Held that the court properly sent the report back to the same committee for them to hear the claim of B and determine whether he owned the land, and to correct their report as to the damages if he was found to be the owner.

[Argued January 3d—decided January 25th, 1884.]

APPLICATION for the laying out of a highway ; brought to the Superior Court in Middlesex County. A committee reported in favor of laying out the road; the defendant town, and one Gardner claiming to be the owner of land taken for the road, severally remonstrated against the acceptance of the report; facts found on the remonstrances

and  both  overruled  by  the  court  (*Stoddard*,  *J.*) ;  and  a
decree  passed  laying  out  the  road.   The  defendant  town
and  the said Gardner  severally  appealed to this court.   The
case  is  fully  stated  in  the  opinion.

*D. Chadwick* and *W. F. Willcox* for the appellants.

*S. L. Warner* and *S. A. Robinson* for the appellee.

PARK, C. J.  This is an application for the laying out of
a highway.   A committee appointed by the court reported
that  they found  the way  to be  of public convenience  and
necessity and that they had surveyed and laid it out.   The
town of East Haddam, the defendant in the case, and Henry
F. Gardner, a land owner on the proposed route, severally
remonstrated  against  the  acceptance  of  the  report.   The
court found the facts on the remonstrances, overruled them,
and  passed  a decree establishing the highway.   The remon-
strants severally appealed to this court.   We will consider
first the reasons of appeal assigned by the town.

The first reason assigned is, that " the committee, after
the trial before them was concluded, and in the absence and
without the knowledge of the appellant, changed the route
of the road surveyed by the plaintiff's engineer and prayed
for in the complaint, and to which the evidence and argu-
ments were directed during the trial, so as to include a
tract of land used for the purpose of a wharf, which was not
considered  during  the  trial,  and  which  alteration  was
material and such as to entitle the appellant to a hearing
upon it before the committee."

The second  reason  assigned  may properly be  considered
with the first, and is as follows :—" that the committee took
a large triangular tract of land belonging to the estate of
W. H. Goodspeed, for the purpose of creating two approaches
or routes to and from the southern terminus of the proposed
road, and which were not asked for in the application nor
considered on the trial."

The facts found by the court upon these two points are
as follows :

The highway prayed for, and as laid out by the committee, is about two and three-quarters miles in length. The termini as laid out and located by the committee are the same which are particularly described in the application. About six rods from its southern terminus the proposed highway crosses at substantially right angles a public way known as Ferry Path, which runs from the main or Johnsonville road to the Connecticut River, and is about a hundred and forty feet in length. It has been for the last fifteen or twenty years practically disused for public travel, the ferry used in connection with it having been abandoned and its charter surrendered. To enable the town to construct the road-bed of the proposed highway so as to accommodate travel both from the north and south on the main road, the committee laid out its southern terminus in the shape of a triangle. The west line of the highway for about a hundred and eighty feet, forms the base of the triangle; the west line of the main road for about a hundred and forty-five feet, and the north line of the Ferry Path for about a hundred and forty feet, forming respectively its other sides. The estate of William H. Goodspeed owns all the land embraced by the triangle which is not already appropriated to public use, and this land extends westerly to the river, where a wharf has existed for many years. A small part of the land so devoted to wharf purposes lies within the external lines of the triangle. Upon the trial before the committee the petitioner presented a map prepared at his instance by one Augur, a surveyor and civil engineer, showing a surveyed route between the termini, and asked the committee to adopt it as the lay-out of the highway. Augur had been employed by the plaintiff as his engineer, and testified for him on the trial of the case before the committee. This mapped route covered all the private land embraced by the triangle, except a small triangular piece enclosed by the west line of the proposed highway, the south line of the Ferry Path, and the west line of the mapped route. The route as shown by the map passed through the house lot of Christopher Tyler, and necessitated, if adopted,

the demolition of a green house, and would have occasioned
large land damages.  It then continued in a straight line
across the Ferry Path to the southern terminus fixed in the
application.  Tyler's house lot is bounded southerly by the
Ferry Path.  Mr. Chadwick, one of the counsel for the
defendants and remonstrants before the committee, was also
the counsel for the estate of Goodspeed and for Tyler.  The
counsel for the defendants and Mr. Chadwick objected to
the laying out of the highway in any place, but particularly
insisted that if it was to be laid out at all, there should be
a deflection westerly from the mapped route, so as to avoid
cutting Tyler's house lot and destruction of his green
house.  This deflection was urged because it would largely
diminish the land damages, and be in other respects less
expensive.  It commenced at a point on the mapped route
about fifteen rods from its southern terminus and continued
to the Ferry Path.  The deflected route was adopted by the
committee, and is the lay-out of the highway from the point
of divergence to the Ferry Path.  The mapped route was
otherwise adopted.  At the point of greatest divergence the
west line of the mapped route and the east line of the lay-
out are no more than eight feet apart, and the lines of the
routes are separated for about one hundred feet, running to
an acute angle at both ends.  The question whether the
deflected route should be adopted as the lay-out was impor-
tant and prominent in the trial, and occupied the attention
of the parties and of the committee for several days.  This
route required the lay-out to cross the Ferry Path.  William
R. Goodspeed, the administrator of Goodspeed's estate, was
present at the hearing personally, a large part of the time,
and by his counsel, Mr. Chadwick, all of the time.  He knew
that the deflected route was asked for, and was acquainted
generally with the progress of the trial, and was heard upon
the question of damages to the property, but his attention
was not specifically drawn to the fact that the lines of the
actual lay-out took more of his land than this mapped route.
His attention was drawn particularly to the mapped route,
and he did not introduce any evidence having particular

reference to the land not covered by that route, nor make any special claim in reference thereto, but he had full opportunity to do so. Evidence of the land damages and cost of making the road occasioned ·by the deflected route from its divergence to the southern terminus was largely gone into before the committee, and one of the items of cost of making the road upon that route was the probable necessity of raising the roadbed from three to six feet, so as to place it above ordinary high water mark. The cost of so raising the road-bed will be a substantial sum, but it did not appear what it would be: This item, with other items of expense, was fully heard and considered by the committee, and they have awarded Goodspeed's estate damages for all the land actually taken by the lay-out. The damage to the property of the estate by the mapped route would have been nominal. By the actual lay-out the damages do not exceed one hundred dollars. The wharf has been practically disused for the last fifteen years, is out of repair, and with no water approach to it at ordinary low water, and is not of great value. No probable construction of the road-bed of the new highway as laid out will affect injuriously the value of Goodspeed's property beyond the amount assessed therefor. During the hearing, Augur, the plaintiff's engineer, as a witness, suggested two possible methods of constructing the road-bed of the proposed and mapped route to reach the main road, one by a single and one by a reverse curve. There was no plan of either of the curves before the committee, and none showing the precise location of the lines of the lay-out. The committee requested the defendants to furnish a map showing the deflected route to the southern terminus, and supposed that they would comply with the request, but it was not done. The question as to whether the deflected route should be taken for the lay-out, was not determined until after the final arguments, and no hearing was had after it was decided to follow that route. The highway as laid out by the committee is the same highway asked for in the petition, if the committee had power to adopt the deflected route.

It is nearly impossible without a map to understand pre-
cisely what was done by the committee in the matters here
complained of, but it appears from the map used on the
argument that the occupancy of the Goodspeed land and
the widening of the road at its southern terminus grew out
of the deflection of the line of the road at the house of Mr.
Tyler, which is but a few rods from the terminus. So far
as that deflection is concerned it would be a sufficient
answer to the objection made to it that it was particularly
urged by the counsel for the town, in view of the injury to
the premises of Mr. Tyler which a laying out of the road
upon the line as originally surveyed would have caused,
and the consequently increased damages which the town
would have been compelled to pay. But it is not necessary
to resort to this mode of meeting the objection. If the
defendant town was not estopped in the matter, the objec-
tion would still be wholly untenable. It has been settled
by repeated decisions of this court that slight deviations
from the route prayed for in the application are not impor-
tant, so long as the termini established are substantially the
same as those prayed for. In *Clark* v. *Town of Middlebury*,
47 Conn., 331, the court say (p. 336:) "It appears that
the petitioners' route as surveyed contains in all ten courses,
with an aggregate of two hundred and fifty-seven rods and
thirteen links of road, while the road as laid out contains
fourteen courses, with an aggregate distance of two hundred
and sixty-eight rods and sixteen links. The lines of the
two surveys are in some instances nearly identical, then they
cross each other at right angles, and at one point of farthest
deviation the two lines are distant from each other about
twelve rods. The termini are substantially the same. We
think the variation referred to, especially in a country road,
could not possibly affect the question of common conve-
nience and necessity, and that the location of the highway
as laid out by the committee was substantially the same as
the petition called for." Here the deviation was much less.
It is found that the west line of the mapped route and the
east line of the surveyed route, at the greatest point of

divergence, were but eight feet apart, making the centre line of the former probably not over five or six rods at the utmost from the centre line of the latter, even where the road was laid out of the great width complained of. We think such a divergence fell within the rightful exercise of judgment on the part of the committee. An application specifying a surveyed route from one terminus of the proposed road to the other, must be taken to mean that route substantially, and the committee are not be limited in the exercise of their judgment in the matter by the fact that the application has not in terms asked for a route substantially agreeing with the line described.

The statement in the reasons of appeal that the deflection was made and the Goodspeed land taken after the trial was concluded and without the knowledge of the appellant, and without being considered on the hearing, is fully negatived by the finding.

The objection made with regard to the widening of the road at the southern terminus, by taking in the Goodspeed land, presents a question which this court has not had occasion heretofore to consider. It is found that this terminus as established by the committee is the same as that prayed for in the application. But it appears that the road at its junction with the main road which runs in a southerly direction through the villages on the bank of the Connecticut River, was widened so as to make it more convenient to enter upon or to leave for those coming on the main road from the north, and those turning from this road upon the main road and going north. The mouth of the new road is made with two diverging tracks, leaving a small triangular space between them, making the road at this point of junction one hundred and forty-five feet wide. The case is likened by the counsel for the town to the laying out of a cross road to accommodate travel coming to and going from the road laid out. But in that case the cross road, however convenient or even necessary, would be an independent road, and of course could not be laid out unless specifically prayed for, either by itself or in the application for the

principal road.　Here the widening of the road at its junc-
tion with an existing road is simply a laying out of the
new road.　The only question is whether the committee
had the power to lay it out as it has done.　Suppose a road
to be laid out sixty feet wide, and to strike another road at
right angles.　Must the mouth of the road be exactly sixty
feet wide, so that all the travel shall turn from one road
into the other at a right angle, or may the committee for
the accommodation of the public, perhaps for its great ac-
commodation, cut off the corners and allow a considerable
curve on each side for the track from the new road to the
old one?　We see no reason why we may not do it, if they
are satisfied that the public convenience requires it, and that
although the application may have said nothing about the
matter beyond·describing the terminus as a certain point.
Still more would such a course seem proper where, as here,
the new road strikes the old one at an acute angle.　This
road was laid out sixty feet wide.　Of course at its mouth
the distance from one side to the other would be much
greater and nearly or quite one hundred feet.　On one side
there is a sharp angle to be turned by all persons going
from one road to the other and turning on that side.　May
the committee in every such case cut off a hundred feet
perhaps of that angle so as to make a considerable saving in
distance and in convenience of turning to those who pass
from one road to the other on the side where that angle
lies?　We can see no good reason why they may not.　And
this too although it may leave between the two diverging
tracks of the new road a small triangle of land not used.
The road is laid out for the public convenience, and this is
one of the details of that convenience that the committee
have a full right to exercise their judgment upon.　There
may be circumstances where it would be a serious omission
on their part not to do it.　A considerable ascent might
thus be avoided where the junction of a new road with an
old one is upon or near the top of a hill.

　The next reason assigned in the appeal of the town, is
" that after the final adjournment the committee employed

E. P. Augur, the plaintiff's engineer, against the objection of the appellant, who was in attendance and assisting them three days in laying out the road asked for and in making the change of route referred to, all of which was in the absence and without the knowledge of the appellant."

The facts found by the court upon this point are as follows:—At the close of the hearing the committee inquired whether, in the event that they should decide to lay out the road, the parties desired to make any suggestion as to the engineer they should employ. The defendants' counsel replied that they objected to the employment of Augur. After the committee had decided to lay out the highway, they made inquiries for a surveyor, and ascertained that Mr. Chandler, the defendants' engineer, had returned to his home in Norwich, that Augur was still in town, and that no other surveyor could be had without considerable delay and some expense. They thereupon sent for Augur, told him they had decided to lay out the road, and desired him to make such measurements and computations and drive such stakes and fix such monuments as they should direct him to do; one of the committee saying to him that they did not want his assistance by way of advice or suggestion, but only to do the things directed. Augur consented to so act for the committee, and was with them the greater part of three days thereafter, during which they were employed in defining the precise location of the lines of the lay-out and securing data for their report. The parties were not present during any part of these three days.

The matter alleged is that Augur was employed by the committee against the appellant's objection, and assisted them for three days in laying out the road and in making the change of route referred to. If by this allegation is meant that Augur assisted them with advice as to the laying out of the road and as to making the change of route, the committee may have been guilty of serious misconduct in employing him, but the finding of the court shows that he was employed after the committee had decided to lay out the road, and for the mere mechani-

cal service of measuring courses and distances and putting down stakes under their direction. For such a purpose it was a matter of very little importance that he had been a surveyor for the plaintiff, or that the appellant objected to him. As a matter of expediency and to prevent all possible suspicion or cavil, it might be better that the surveyor employed for such purpose should be one that neither party objects to, but a good reason is shown here why Augur was employed, and there was no impropriety in his employment by the committee in the circumstances. The finding of the court really negatives all that is important in the reason of appeal assigned.

The fourth reason of appeal assigned by the town is, that during and after the trial the committee were subjected to improper influences, which tended to warp their judgment and prejudice them in favor of the proposed road.

The facts found on this point are as follows :—The committee during the greater part of the trial boarded at the Champion House, a hotel situated near the southern terminus of the proposed highway. The proprietor of the hotel used in connection with it a small steamboat or yacht, which the committee understood to be kept for the common convenience of all his guests. The place of the hearing was at a lower village on the river, about three quarters of a mile from the hotel, and on some occasions the committee were carried to and from the place of trial on the steamboat, and sometimes went back and forth on foot or by the hotel wagon. On some occasions some of the petitioner's counsel or witnesses were also upon the steamboat, and sat at the same table with the committee at the hotel while dining. On two occasions the hotel proprietor took the committee, with other persons, upon the steamboat for short pleasure sails. One of such pleasure sails was through Salmon Cove and up Salmon River. At this time Augur was present. While on this sail the boat ran aground at a point just above a wharf. This sail was made during a freshet, and the boat was run without reference to the channel of the stream and across the meadows. No allusion was made

during this trip to any matter connected with this litigation. This sail was had before the defendants had made the claim now to be stated. The defendants subsequently on the trial claimed that common convenience and necessity did not require the proposed road, and one of the reasons given by them was that the business people of Moodus, at the northern terminus of the road, could be well accommodated by transporting their freights over a water route up Salmon Cove to a wharf and road already built leading to Moodus; the wharf being the one above referred to. The plaintiff claimed, in reply, that there was difficulty in navigating this cove with vessels of considerable size at an ordinary stage of the water. The defendants' counsel now claim that the pleasure sail and grounding of the boat was a preconcerted plan to influence the committee upon this question; but this claim as matter of fact was not sustained. On one occasion during the trial, in presence of Mr. Woodruff and Mr. Newton, of the committee, others being present, and the remark being heard by Mr. Newton, the wife of the proprietor of the hotel said she did not know anything about the reasons for or against the road, but that she was sure that those who wanted the road had good reasons, and those who opposed it had bad reasons. This remark was not addressed to any member of the committee. When it was made her husband said to her that it was not proper for her to remark about the road in the presence of members of the committee, and she replied that she must talk or die. Mr. Newton testified that he understood the whole conversation to be in jest, and not intended for serious consideration. After the committee had decided to make the layout, the same lady said in the hearing of Mr. Newton that she should be mad if they did not get the road, but should think more of the committee if they decided as they thought right. During the trial the members of the committee on two or three occasions accepted social invitations to private houses, and on one occasion at the house of D. B. Warner during a game of whist, in which one of them participated, his partner, a young lady, said as they won a game, "I can-

not but think we are playing for the road." Her sister immediately said to her, "You know nothing was to be said about the road." It did not appear that the other members heard the remark or knew of its being made. Mr. Warner was a witness for the petitioner, and owned some property near the southern terminus of the road, and favored the proposed lay-out. No member of the committee did or said anything to invite or encourage any of these remarks, made no reply to them, and did not permit or allow them to be made. There was no misconduct or irregularity on the part of the committee, or any member of it, unless the law infers misconduct or irregularity from the facts stated. All allegations of the remonstrance not herein found true, and those not consistent with the facts herein found, are not proved and not true.

It is contended by the appellant that these facts show "irregular and improper conduct" on the part of the committee, which is made by the statute a sufficient ground for setting aside the report. Gen. Statutes, p. 238, sec. 39.

In *Beardsley* v. *Town of Washington*, 39 Conn., 265, it is said that "the trial of applications of this character can not be guarded with the same strictness as those which are had in court, but every precaution which can reasonably be taken to guard against even the possibility of improper influences and to ensure a perfectly fair trial, should be observed. *Primâ facie* the entertainment of triers by one of the parties, for all or any part of the time occupied by the trial, is irregular and improper ; for though all may say that no undue influence has been observed or attempted, there may be an influence felt and operative which is not seen or heard or even intended." In that case the committee had been entertained during the whole of the trial by one of the petitioners, but it appeared that there was no inn in the neighborhood, and that the petitioners and the selectmen of the respondent town had agreed that the committee should be entertained at that place, with the counsel on both sides; and the court held that this was a sufficient explanation and justification of the act. The court also held that it

did not affect the case that the entertainment was a handsome and liberal one and without cost to either party. In the present case no question is made as to the propriety of the committee's staying at the hotel where they did, although it was near the southern terminus of the proposed road and the proprietor was interested in its being laid out. The objection is to their having received attentions from the landlord which it is claimed tended to bias their minds, as well as also on one occasion an invitation, which they accepted, to a social gathering at the house of Mr. Warner, who was also interested in having the road laid out. The acceptance of such special attentions we regard as objectionable, even where they produce no effect whatever upon the minds of any of the committee, as tending to create a distrust of the committee in the minds of the other party, and a suspicion of unfairness in the decision of the committee where finally adverse to them. It is far better therefore that no room be given for suspicion or cavil. It is however to be presumed that such a committee is above the reach of such petty influences. It is to be considered that, unlike jurymen, who are drawn by lot from a large collection of names often selected with little intelligent care, they are specially appointed by the court, generally upon the agreement of the opposing parties, and if not, then upon careful consideration, and that they are selected for their fitness for such a duty. It may fairly be assumed therefore that they are less responsive to misleading influences, especially such petty ones as in this case, and of sounder and more steadfast judgment, than ordinary jurymen. In this case the court has found that there was no improper conduct on the part of the committee unless the law would so infer from the facts found. The effect of this finding is to negative all improper intent on the part of the committee and all improper effect on their minds of the attentions they received, and to leave the question as a bare one of law, whether such attentions offered and received are in themselves and necessarily irregular and improper conduct under the statute. The whole question is a mixed

one of law and fact, but predominantly of fact, and we cannot say, if the conduct has no impropriety in fact, that there is enough left of it to constitute improper conduct in law.

The idle talk of some ladies interested in the laying out of the road, seems by the finding to have attracted no attention and to have had no effect.    It would be an impeachment of the common sense of the committee to suppose that it possibly could have had.    It needs some firmness of judgment and self control not to be prejudiced against a cause so advocated and biased in favor of the other side.

The claimed attempt to bias the committee by purposely running the steam yacht aground in Salmon Cove seems to be negatived by the finding.    The court has in fact expressly negatived every allegation of the remonstrance not expressly found true.

The remaining reasons of appeal on the part of the town are the same with those of the appellant Gardner.    They are—1st. That the court should have decided the question of title to the land claimed by the said Gardner, and not have referred it to the committee to be heard and determined. —2d.  That the committee having heard and made its report to the court had exhausted its power and discharged its duties as such committee.—3d.  That the committee was not an impartial and proper tribunal to hear and determine the questions upon the claims made by the said Gardner, it having prior to said hearing determined the questions involved in the case without notice to him.

It appears that Gardner remonstrated against the acceptance of the report of the committee on the ground that he had an interest in a certain piece of land over which the highway was laid out, and that no damages had been awarded him.    The court found that he had legal notice of the pendency of the application for the highway, and of the time and place of the hearing, and that he appeared as a witness before the committee, and was heard as to the cost of the road and the convenience and necessity of the same, but that no evidence was offered as to damages sustained by him in the laying out of the highway over the land now

Greene v. Town of East Haddam.

claimed to be his. The court therefore ordered the cause to be recommitted to the same committee for the sole purpose of determining whether Gardner had, at the time of the service of the complaint, or of the hearing and lay-out, any title to or interest in the land in question, and if he had, of assessing the damages sustained by and special benefits accruing to him by the laying out of the highway. The committee heard the question thus submitted, and made report that they found that Gardner had not at the time stated any title or interest in any of the land taken for the highway. The court therefore found the allegations of his remonstrance untrue and overruled it. The question now made is, whether the court properly recommitted the case to the committee to find the facts with regard to the title of Gardner and his damages if any.

This being a part of the matter which the committee were originally appointed to hear, there could be no objection, if their report was incomplete at any point, or if they had by some mistake made a claimed error, to referring the case back to them for a fuller or more correct report. The claim that they were not an impartial tribunal because they had once decided the point in question has no substantial foundation. The uncertainty was upon a mere matter of fact, easily determinable by an examination of the public records, and one upon which, especially as no question had been made on the point before, they could not possibly have had any pride of opinion. We see no objection whatever to the course taken.

There is no error in the judgment of the court below, and it is affirmed.

In this opinion the other judges concurred.