[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an appeal from the doings of the Inland Wetlands Watercourses Commission of the Town of Burlington granting approval of A. Aiudi Sons to remove sand and gravel from property abutting a man-made body of water known as Lake Como in the town of Burlington. CT Page 8004
The approval sought from the Commission was for "enlarging size and depth of Lake Como and removal of sand and gravel from abutting upland property", claiming the activity to be "continuation of existing gravel operation which has already begun. Need to complete excavation of the lake." See application dated February 11, 1993. Attached to the application is a Connecticut Department of Environmental Protection, Statewide Inland Wetland and Watercourse Activity Reporting From describing the total acreage of the project site as 4.5 acres, the wetlands soil area altered as .9 acres, and the area of wetlands and watercourses created as 4.5 acres.
The Commission had before it the following information. Lake Como was created many years ago, approximately 1938, by a gentleman who was originally from Northern Italy. A. Aiudi Sons are and have been for many years in the sand and gravel business. They purchased the lake and adjacent property and commenced gravel removal operations in 1974.
There is a man-made dike on the northern perimeter of the lake. This dike was created by A. Aiudi Sons many years ago so that their gravel excavation, which is north of and upland of the lake, would not interfere with the man-made lake.
The present size of the lake is approximately ten acres. The depth of the lake varies, and appears to have a maximum depth of six, feet, with some indication that the average depth of the lake is 3 1/2 feet. The testimony before the Commission appears to be in agreement that Lake Como would benefit from having the lake deepened, for ecological reasons and for the recreational and residential enhancement of the citizenry.
The proposal before the Commission is to remove sand and gravel on the north side of the dike, thereby extending and enlarging a small pond area north of the lake which is 14 or 15 feet in depth. This enlarged deep pond area is expected to eventually be an area of ten to twelve acres, 14 or 15 feet deep, hence substantially enlarging the size of the deep pond north of the dike. Additionally, there may be some future dredging immediately south of the dike to increase the depth of the now existing Lake Como, south CT Page 8005 of the dike. The ultimate goal, though not essential to the application, is to lastly remove most of the dike, thereby creating one contiguous enlarged body of water, with several small islands for wildlife resulting from retaining several portions of the dike which are suggested to be left in place for that purpose.
The approval sought is for excavation of an initial five acres. Both Zoning Board approval and Wetlands Commission approval is needed to progress beyond the five acres. As each acre or two is excavated the applicant must go before the boards for approval and to expand the excavation, presumably to have available a work area of five acres progressive at each stage of the project. Hence this application deals with the initial five acres. Removal is by ground-based equipment, drawing back from the increasingly expanded 15-foot deep pond area north of the dike.
Breaching the dike as a last step will require Army Corps of Engineers approval. If that is forthcoming at the end of the project, there will be one lake, shallow for approximately half of its acreage and deep for the other half. If not, there would be two contiguous ponds or lakes, connected by the existing 18" culvert pipe, one deep and one shallow, each having its own ecological and wildlife characteristics and benefits. The dike presents a solid barrier between pond and lake to prevent silting into the lake during excavating. The culvert between pond and lake will be screened to completely prevent silt from entering the lake.
The appellants are Donna Denehy, Richard Denehy and Lake Como Concerned Citizens. Donna Denehy owns real property within 90 feet of the parcel and is statutorily aggrieved, General Statutes § 22a-19, and is a proper party to bring this appeal. Richard Denehy intervened in the proceedings and is a proper party to bring this appeal. Lake Como Concerned Citizens is proffered as "a voluntary association formed to protect the fragile environmental resources associated with Lake Como." Although the record does not further identify the names of the members it does indicate that Mr. Richard Denehy rounded the organization "because of the promise of a better Lake Como has been there since 1973." The Court is satisfied that under the CT Page 8006 criteria referred to by the Supreme Court in Timber TrailsCorporation v. Planning Zoning Commission, 222 Conn. 380,393 (2992), the status of the organization is sufficient to confer standing for the purposes of the appeal.
The Merits of the Appeal
The proposed approximately five acres north of the dike, from which the gravel is to be removed, contains approximately one acre of wetlands. The evidence before the Commission is that the five-acre parcel consists of what is described as "disturbed soil area." That is to say that the area had been the subject of past gravel removal operations. There is very little if any natural ancestral vegetation in the area. The species out there are basically pollenizing species which can move into the disturbed soil area within the site. There are no species listed as threatened, rare, or endangered, or species of special concern. There is no evidence before the Commission to conclude that the subject area is the site of ancient or primordial natural ecology, or is the haven of rare or endangered species. The area is best described as one of external intrusion or sporadic generation of plant life upon the site of a previous gravel mining operation.
It is the position of the appellants that rather than to excavate this area the defendant Aiudi should dredge or excavate gravel from the existing lake south of the dike, and that the failure to submit a proposal to that effect was a violation of General Statutes § 22a-41(b). They claim that the petitioner's submission of alternatives is necessary to support a finding that "the Commission(er) finds that a feasible and prudent alternative does not exist"; alternatively they claim that the evidence demonstrates that there is in fact a feasible and prudent alternative. The appeal further claims that the proceedings are tainted by ex parte communications, and that the appellants were denied the opportunity to introduce evidence; and that the Commission failed to adhere to its regulations.
On July 22, 1993 the Commission voted, six in favor, one opposed, to approve the application, setting five specific conditions or modifications as conditions of approval. The plaintiffs filed this appeal. The reasons CT Page 8007 for appeal, as briefed and argued are as follows:
A. The Commission acted illegally, arbitrarily and in abuse of its discretion in permitting destruction of wetlands despite the existence of a feasible and prudent alternative.
 "In challenging an administrative agency action, the plaintiff has the burden of proof. The plaintiff must do more than show that another decision maker, such as the trial court, might have reached a different conclusion. Rather than asking the reviewing court to try the case de novo, the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision."
 Samperi v. Inland
Wetlands Agency 226 Conn. 579, 587 (1993) internal citations omitted
The Court turns to the record to determine if there is an adequate basis for the decision of the Commission.Gagnon v. Inland Wetlands Watercourses Commission,213 Conn. 604, 611 (1991).
First, it is noted that the plaintiff does not contest the appropriateness of the means and methodology proposed to excavate the ground north of the dike, to accomplish an enlarged deep pond on the five-acre site. The method proposed is to utilize appropriate ground-based equipment, working back from the existing pond north of the dike. An access road presently exists. The removed gravel is drained on-site and thereafter transported to an off-site location remote from the work area. Removed soil is similarly dried, and then transported to and recycled at the remote plant site.
It is not the plaintiffs' position that the work on the five-acre site should be done in a different fashion by different equipment or through different points of access, or the like. It is the plaintiffs' position that the work north of the dike should not be done at all. The Commission was able to conclude from the evidence, not only CT Page 8008 that this was a proper method to accomplish the gravel removal activity on the enlarging site but that it was the only realistic, sensible and environmentally sound method to accomplish the proposed removal on that area.
Although it is always possible for the minds of men to conjure different mechanical means of accomplishing a task, though none were advanced by anyone to accomplish the excavation of the five-acre tract in this case, mere flights of fantasy are not required of an applicant, as a suggestion, merely to comply with a requisite of suggesting alternatives. Any suggested alternative must meet the requisite of a feasible and prudent alternative. General Statutes § 22a-41(b).
The fact that certain, wetlands may be diminished or destroyed by an activity is not in and of itself conclusive upon a Commission in determining whether an activity is to be permitted. The Commission must exercise discretion. In the instant case the Commission had before it the fact that the excavation will simultaneously result in the creation and expansion of a substantially enlarged desirable deep water pond. The Commission had before it the opinion of the Hartford County Soil and Water Conservation District, Ms. Denise Condlin, solicited by the Commission, that "the district does not generally encourage the conversion of wetlands to open water habitat. However, open water habitat is a valuable option that should be considered in some circumstances." It was for the Commission to determine whether the conversion of some second growth wetlands into an ecologically valuable resource and habitat, an enlarged deep water pond, was reasonable and feasible. The Court cannot substitute its judgment for that of the Commission, and particularly where such judgment is fully supported by the record. The mere fact of loss of some wetlands under these circumstances would not support the sustaining of the appeal.
Returning to the matter of alternatives. It is the plaintiffs' position that the defendant Aiudi was required to propose mining of gravel within the existing Lake Como as a "feasible and prudent alternative", and that the failure to do so and/or the failure of the Commission to find such proposed other activity as a feasible and reasonable alternative invalidates the decision of the CT Page 8009 Commission.
This contention is untenable for a number of reasons. First, the plaintiffs view the application as primarily an application to deepen Lake Como, leaving to the administrative process the determination as to the best method to accomplish that goal. As expressed, the application is to excavate commercially useful sand and gravel north of the dike. The fact that optimistically this will result in a larger deepened lake, or at minimum the creation of an enlarged deep water pond, is a desired and attractive result. The defendant Aiudi is in the sand and gravel business. It is not in the lake dredging business as a public service agency. Earth excavating is an inherently expensive endeavor. Dredging the existing lake, with its accompanying complexity, is hardly a feasible alternative to the proposed excavation north of the dike.
Further, if one assumes that the application is primarily for the purpose of enlarging and deepening the lake, and only incidentally for the purpose of commercially excavating sand and gravel, the conclusion remains the same. One proposal by the plaintiffs is that the defendant wet dredge the lake south of the existing dike. The Commission could certainly rely upon its own life experience to appreciate the effect which the disturbance of large quantities of subsurface material would have upon the quality of the water in and the ecology of the lake. Further, it is uncertain, from the evidence before the Commission as to how much gravel could be excavated before encountering bedrock; to wit how much gravel is able to be extracted and how how much deepening can occur at that location south of the dike location. There appears to be a paucity of information as to how far into the lake from the dike the armature of land-based equipment can extend, whether floating equipment exists, or is available or economically practicable, and the like, all of which leaves more questions than answers. The possibility of some minor supplementary dredging at the end of the project does not answer these questions.
The plaintiffs, alternatively, propose draining the lake to excavate south of the dike. The problems caused by draining the lake, causing the destruction of aquatic life CT Page 8010 and the disruption of lake habitat should be obvious, even though with the passage of time much of the lake ecology might eventually regenerate.
Although some minor dredging of the lake south of the dike maybe appropriate as a last stage further enhancement of the process, this would not be a realistic alternative to the creation of a new 5 or 10+ acre deepened pond or lake north of the present dike. Further, how the plaintiffs' proposal of dredging dredging the lake could enlarge the lateral (horizontal) size of the water body or bodies, which is a major feature of the defendant's proposal, remains a mystery.
"Feasible and prudent alternatives" have been defined by the Connecticut Supreme Court. Feasibility means that the alternative(s) must be realistic. "`Prudent alternatives are those which are economically reasonable in light of the social benefits derived from the activity.'" See Manchester Environmental Coalition v. Stockton,184 Conn. 51, 62, 63 (1981).
The Commission, in its decision of July 22, 1993 discussed in detail the alternatives proposed by the plaintiffs. The Commission concluded that "after a thorough discussion of these alternatives the consensus of the Commission was the alternatives were exhausted", and found that "there are no feasible or prudent alternatives to the application as presented."
Consequently, even if the application is to be treated as an application to create a deepened and enlarged lake, rather than an application to excavate 5 acres of gravel, yet the finding of the Commission as to no feasible or prudent alternative is fully supported by the record. Hence the plaintiffs cannot prevail on this argument concerning feasible and prudent alternative.
B. The Commission acted illegally arbitrarily and in abuse of its discretion by conducting ex parte communications with the applicant and experts expected to testify before the Commission.
The plaintiffs' argument is twofold. First, that Commissioner Schwartz, the plaintiff claims, must have had CT Page 8011 an ex parte discussion with the applicant, Mr. Aiudi. There is nothing in the record to support that contention. At oral argument the plaintiff argues that because Commissioner Schwartz, at page 89 of the transcript, referred to the steps of the project as two and two and two he must have obtained that understanding by ex parte communication with Mr. Aiudi.
The transcript reveals that on page 21 of the transcript Mr. Aiudi described the progression as a process whereby when a part of the 5 acres is dug out the applicant will go back to the Commission to ask for two more acres: "If we take out two acres then we will have to go back to the Commission to ask for two more acres." The two plus two plus two comes directly from the hearing, prior in time to Schwartz categorizing the project as two and two and two. The innuendo suggested by the plaintiff is contradicted by the record and is rejected the Court.
The second claim of ex parte refers to a conversation between Commissioner Schwartz and Dr. Neiring, the expert of the plaintiffs. The plaintiffs did not place upon the record, either by a representation or by the testimony of Dr. Neiring, any description of the subject of that conversation, although urged to do so by Commissioner Schwartz. Nonetheless, Commissioner Schwartz disqualified himself from further participation in the hearing. There is nothing in the record to indicate that whatever was the subject of that conversation, that Commissioner Schwartz shared whatever that was with any other member of the Commission.
The plaintiffs cite the case of Low v. Madison,135 Conn. 1 (1948) to assert the proposition that this creates the appearance of impropriety. The facts of that case are entirely different.
The voluntary disqualification by Commissioner Schwartz, and his abstaining from any further participation, is precisely the method required by law to preclude either actual impropriety or a reasonable apprehension that any ex parte communication affected the decision of the Commission. This reason for appeal cannot be sustained. CT Page 8012
C. The Commission acted illegally, arbitrarily and in abuse of its discretion in failing to allow the introduction of information by the opponents to the application.
It is the plaintiffs' contention that the Commission should have allowed into evidence a Department of Environmental Protection photograph, ostensibly to show that at some time in the past the applicant had filled in some wetland area. The Commission asked whether the plaintiffs were making a formal complaint at this time. The answer was "No, I'm not." The Commission responded "OK, we need to discuss what is being proposed to the Commission now." The plaintiffs complain that because the Commission received evidence that somewhat similar projects had been successfully completed in other communities, so as to show that the proposed project was physically and ecologically feasible, that the plaintiffs should have been allowed to demonstrate that in the past the applicant may not have complied with total adherence to wetlands restrictions.
The plaintiffs cite Huck v. Inland Wetlands andWatercourses Agency of the Town of Greenwich, 203 Conn. 525
(1987) for the proposition that those interested in the application must have a right to produce evidence. The proposition, however, is that "the parties involved have the right to produce relevant evidence. Huck v. Inland, supra, p. 536, (emphasis added.)
The evidence sought to be produced was to proffer to the Commission that if the application is granted the applicant might conceivably violate the terms of the grant, for at some time in the past he did not adhere to the inland wetlands regulations.
This has no relevance in the granting of the application. If the application is granted the activity is under the continuing supervision of the Commission, both at its inception and during any progressive stages. The application must be decided on its merits. The hearing is not a trial of the man. It is a trial on the merits. The rejection of the proffered evidence, as not being relevant, was an exercise of proper discretion by the Commission. This reason for appeal cannot be sustained. CT Page 8013
Reason D. The Commission acted illegally, arbitrarily and in abuse of its discretion in failing to adhere to its regulations when granting a permit to Aiudi.
The plaintiffs contend that the defendant Aiudi failed to provide to the Commission all of the information required by the application form "Site Plan and Environmental Information" required to be attached to the application. The form is one of general applicability for use in many different types of wetland applications. Much of the information requested by the form, such as "existing" and proposed buildings, driveways, septic systems or other structures" had no applicability to the application.
The defendant submitted to the Commission a series of four extremely detailed maps and drawings, in minute detail, adequately describing the information required by the application. In addition thereto the entire site was described and articulated in great detail by the experts who testified at the request of the applicant and those who testified at the request of the plaintiffs. It is difficult to envision a hearing or series of hearings whereby any Commission or board has before it as complete an articulation of the site and the proposed activity, and which was more meticulously critiqued than was this application.
As in the matter of Samperi v. Inland Wetlands Agency,226 Conn. 579, 596 (1993), the substantial evidence standard of review of inland agency cases is met in this case. The agency listened to a considerable amount of testimony from numerous witnesses, including lay persons and experts. It diligently asked questions and engaged in ample deliberations. The agency is not required to adopt the testimony of any particular witness, including that of any particular expert. The agency's decision to approve the permit constitutes an implicit, and in fact an articulated finding that no other feasible and prudent alternatives existed. See Samperi v. Inland WetlandsAgency, supra, pp. 596, 597.
The local agency must be given latitude in determining what information is reasonably necessary, appropriate and CT Page 8014 relevant to arrive at a rational decision, bearing in mind that a printed form designed for use in a multitude of types of applications may call for information which is not necessarily appropriate to each specific application. The Commission is fully at liberty to request of an applicant any additional information which it deems appropriate to arrive at a rational decision. The wealth of information presented by both sides, pro and con, provided more than adequate information to allow the Commission to arrive at a rational decision in this matter. "Courts must be scrupulous not to hamper the legitimate activities of civic administrative boards by indulging in a microscopic search for technical infirmities in their actions." Gulf OilCorporation v. Board of Selectmen, 144 Conn. 61, 66 (1956).
For the reasons set forth herein the Court affirms the decision of the Inland Wetlands and Watercourses Commission of the Town of Burlington. The appeal is accordingly dismissed.
The Court, at the hearing of July 25, 1994, at the request of the plaintiffs, issued a temporary injunction prohibiting the commencement of the applied for activity until this decision had been rendered. The decision of this Court, entered this date, sustains the decision of the Commission granting the application. Consequently the said injunction is hereby dissolved as of the date of this decision.
L. Paul Sullivan, J.