EDWARD H. PECK, ADMINISTRATOR, *vs.* WILLIAM B. PIERCE AND OTHERS, EXECUTORS.

New Haven & Fairfield Cos., June T., 1893. ANDREWS, C. J., CARPENTER, TORRANCE, FENN and BALDWIN, Js.

It is not necessary to the admissibility of written memoranda left by deceased persons, under Gen. Statutes, § 1094, that they should in terms refer to the matter in controversy. It is enough if they can be shown by other evidence to do so.

And an oral statement of a deceased party held admissible under the same statute, which, though general in its terms, could be regarded as embracing the matter in question, its generality going to its weight.

The question being whether certain interest had been paid by a party, now deceased, an account book kept by him was offered in evidence to show that it was not paid, the book containing many entries of payment of interest to other persons, but none of the payment of the interest in question. Held not necessary to its admissibility that it be shown to contain entries of all the party's payments of interest, that matter affecting its weight as evidence and not its admissibility.

Where an account book is "laid in" in evidence, all that is ordinarily meant is that it is identified and marked as an exhibit in advance of its contents being offered in evidence. It therefore does not become an offering in evidence of all the entries in it unless such appears to have been the intention of the counsel laying it in or the understanding of the parties at the time.

Where a judge, in a case tried to the court, has considered evidence not regularly before the court or which he has afterwards ruled out, and has intended to disregard it in making his decision and is confident that he has done so, yet it is not safe to accept his judgment in the matter, and a new trial should be granted unless it clearly appears that the party against whom he decided could not have been harmed.

[Argued June 14th—decided September 9th, 1893.]

ACTION on a note ; brought to the Superior Court in Fairfield County, and tried to the court before *Prentice, J.* Judgment rendered for the defendant, and appeal by the plaintiff for error in the rulings and action of the court. The case is stated in the opinion.

*S. Fessenden* and *G. A. Carter, Jr.*, for the appellant.

*E. L. Scofield* and *C. L. Reid*, for the appellees.

TORRANCE, J. In 1886 Alexander Milne made and delivered to E. N. Peck a note of which the following is a copy :—

" Stamford, Conn., March 26th, 1886. For value received, two years after date I promise to pay to E. N. Peck or order two thousand dollars with interest. ALEXANDER MILNE."

Before suit was brought upon the note Mr. Peck died, in January, 1890, and the note was found uncanceled among his papers, having upon it the following indorsements :—
" Rec'd Mch. 26th, '87, interest $120." " Rec'd April, '88, interest $120." " Rec'd Mch. 26th, ' 89, interest $120."

In April, 1890, the administrator of Mr. Peck brought suit against Mr. Milne on the note. The present suit is a continuation of the suit then brought, Mr. Milne having died in April, 1891, during its pendency, and is defended by the executors of Mr. Milne.

The only question in issue was, whether or not the note had been paid by Mr. Milne in his lifetime. The case was tried to the court and the only evidence given related to this

issue. The defendants claimed that the note was given as part of the consideration upon a sale of real estate in the city of New York made by Peck to Milne for the price of $30,000 ; that this price was paid by Milne's assuming certain mortgages upon the property amounting to $20,000, by his transferring to Peck a mortgage upon another piece of real estate for $8,000, and by giving the note in suit; that on May 7th, 1887, Milne paid the note by delivering to Peck, who received the same in full payment of the note, a check for $1,000, which was paid in due course, and a note for $1,000, which was paid in November, 1887; and that the note in suit was not delivered up at the time of payment because Peck did not then have it with him, nor afterwards because of the neglect and oversight of the parties. All this the plaintiff denied. Judgment was rendered for the defendants and the plaintiff brings this appeal.

Five reasons of appeal are filed, but as the fifth does not comply with the requirements of section 1135 of the General Statutes, but is a mere general assignment, it will not be considered. The other reasons of appeal will be considered in the order of their assignment.

Under the fourth reason of appeal we think the plaintiff is entitled to a new trial, and this ordinarily would render it unnecessary to consider the others, but as the questions involved in them may again arise upon a new trial we have concluded to express our views as briefly as possible upon them also.

The first assignment relates to the admission of the following entries on pages 166 and 167 of the account book of Mr. Milne and in his handwriting :—

" 1888, Feb. 1. House and lot 215 West 18th St. $30,000

|  |  |  |  |  |  |
|---|---|---|---|---|---|
| " | " | Paid on acc. | . | . | $8,000 |
| " | " | " E. N. Peck and | | | |
| | | brother | . | 9,500 | |
| " | " | " " | . | 2,000 | |
| " | " | Due Mrs. ——— | | | |
| | | Mortgage | . | . | 10,500 |
| | | | | $30,000 | $30,000 " |

If these entries, either alone or in connection with other evidence in the case, are intelligible, then, if they are also relevant, they are admissible under our statute as memoranda made by Milne in his lifetime. *Setchel* v. *Keigwin*, 57 Conn., 473.

The deed and the other evidence in the case make it quite clear that these entries refer to the purchase of the New York property, and read in the light of that other evidence the entries themselves state the price of the property, the payment of that price, and to a certain extent the mode of payment, and the amounts which made up the full price. Now the plaintiff, as we understand the record, disputed the fact of the purchase of the New York property as well as the fact that the note formed a part of the consideration for it; and these entries are certainly relevant upon the former fact because they refer to such a purchase.

But the plaintiff says they were offered to prove the payment of the note and that they do not in any manner refer to the note, and for this reason are not relevant on the question of its payment. Standing by themselves they do not show a reference to the note, but this of itself does not necessarily make them inadmissible. As one step in their proof it was necessary for the defendants to show that there was such a real estate transaction, including of course the price paid and how it was paid, if paid at all, and these entries are clearly relevant for that purpose, and for aught that appears from the record may have been offered for that purpose alone, for they were offered generally. But we think they were admissible also in connection with the other evidence to show that the note formed part of the consideration for the real estate and had been paid as part thereof.

The other evidence showed that the note was given as part of that consideration, and that the balance was made up by the transfer of a mortgage of $8,000 to Mr. Peck, and by Mr. Milne's assuming two mortgages, one for $9,500 and one for $10,500, and these entries show payments of amounts corresponding exactly to the amounts of these mortgages and this note. That the two thousand dollar item was appar-

ently paid to E. N. Peck and brother, and did not as it stood expressly refer to the note, did not necessarily destroy its relevancy, although it might affect its weight. It might be shown by other evidence to refer to the note and to nothing else, just as we think the item of eight thousand dollars paid on account might have been shown to refer to the mortgage transferred to Mr. Peck. In a precisely analogous case subsequently, both parties offered outside evidence to prove that the word " interest " in the receipt of April, 1888, hereafter mentioned, referred to the interest indorsed upon the note, and did so properly we think.

The second reason of appeal relates to the testimony of the witness Pierce. The defendants denied that Mr. Milne had paid interest on the note in 1888 and 1889, and thus denied the correctness of the last two indorsements.

As tending to show the truth of their claim they called Mr. Pierce's attention to the account book of Mr. Milne. He testified in substance and without objection that it contained no entry of any payment of interest to Mr. Peck. The defendants then offered to show by him that said book contained frequent entries of the payment of interest to others ; that is, as we understand, to show that the book contained entries of very many, although not of all, payments of interest made by Mr. Milne to others. To this evidence the plaintiff objected, unless it was shown in substance that *all* payments of interest made by Mr. Milne had been so entered. It seems to us that the evidence thus objected to is of the same nature as that to which this witness had just previously testified without objection. The absence in such a book of any entry of payment of interest to Mr. Peck tended to some slight extent to show that no such payment had been made ; and the frequent presence of such entries of payments of interest to others, even though all such payments were not entered, was a fact of like nature, and would also tend in some slight degree to the same conclusion. The fact that *all* payments of interest were not entered upon the book would, generally speaking, go to the weight rather than to the admissibility of the evidence in both cases. We think the

evidence was admissible for what it was worth, without first showing that *all* payments of interest were paid by check or entered upon the account book.

The third reason of appeal relates to the testimony of Mr. Ritch concerning certain declarations of Mr. Milne. For many years before the note was given, and down to the time of Mr. Peck's death, he, Peck, had been the agent of Mr. Milne, looking after Mr. Milne's real estate, collecting the rents and rendering to him monthly statements and making monthly settlements. Now with reference to the last two indorsements of interest on the note in suit, the defendants claimed that if any such interest was in fact received or applied by Mr. Peck the same was applied by him from the rent money and without the knowledge of Mr. Milne; and that he rendered his statements in such a way that he could have done so without the knowledge of Mr. Milne. In support of these claims they asked Mr. Ritch—" Did Mr. Milne ever make any statement to you in reference to the accounts which Mr. Peck rendered to him for rents collected?" The witness answered as follows :—" I had a conversation with him in regard to Mr. Peck's accounts immediately after Mr. Peck's death. Mr. Milne asked me if I could get him a reliable real estate agent in New York who could collect his rents and make returns ; that he had been wholly unable to get statements from Mr. Peck showing what deductions were made from the rents received ; and that he had to take checks from Mr. Peck without a knowledge on his part of how his account stood. There is no complete statement." The plaintiff objected to the question and the answer, but we are here concerned only with the answer.

The plaintiff now says the declarations were inadmissible because they relate merely to the inability of Mr. Milne to get correct statements of account and not to the payment of the note ; and because they are too general and do not refer to the statements made in April, 1888, and March, 1889, when the indorsements in dispute were made. We think the evidence was admissible under our statute. Its generality goes

to its weight only. The declaration was in form and in effect that he had been unable to get any correct statements from Mr. Peck. This covered the statements for April, 1888, and March, 1889, as well as others. It had a bearing, however slight, upon the question whether the interest could or might have been applied on the note from the rents without the knowledge of Mr. Milne as claimed by the defendants; and this again of course had a bearing on the question of payment.

The fourth reason of appeal, and the last to be considered, relates to the action of the court in taking under its observation certain entries in the account book of Mr. Milne, which the plaintiff claims were not evidence in the case. To show that interest had been paid on the note by Mr. Milne in April, 1888, the plaintiff introduced the following receipt in the handwriting of Mr. Milne: " Received, Stamford, 27th April, 1888, balance of rents for current month, less interest. ALEXANDER MILNE."

The plaintiff claimed that the interest therein referred to was interest paid on the note in suit, while the defendants denied this. The court finds that " there was nothing in evidence showing any other indebtedness from Mr. Milne to Mr. Peck upon which interest was due or payable at or near the date of said receipt, and there was no direct evidence offered explanatory of the reference to interest in said receipt or to indicate what was meant thereby. No entries in Mr. Milne's book were referred to by the defendants as throwing any light upon the matter, and the language of the receipt was left open to such speculation as to its meaning as the transaction of the parties in evidence, concerning which Mr. Peck kept no accounts and Mr. Milne only an incomplete and unbusinesslike one, furnished ground for." The court further finds as follows : " While the court had the case under consideration for its decision the following entries in said account book kept by Mr. Milne, to which attention had not been called during the trial, came under his observation :—

" '1887. July 1. Mortgage acc. with protested
 notes in First National Bank of Stamford, . $5,035 00
 " ' Interest to be paid semi-annually.
" ' Amount paid on mortgage,   .   .   .    72 00

            4,963 00

" ' John A. Holmes, due 1 July, 1888.
" '1887. March 26. N. L. Hart's bill, search and
 mortgage, Darien,   .   .   .   .   .    79 70
" ' March 30. Paid 1st Nat. B'k, Stamford, on
 acc. of int., .   .   .   .   .   .    42 50
" ' July 1. Paid 1st Nat. B'k, Stamford, on acc.
 of int.,   .   .   .   .   .   .   .    72 70
" ' Oct. 1. Paid 1st Nat. B'k, Stamford, on acc.
 of int., .   .   .   .   .   .   .    72 50
" ' Dec. 1. Paid 1st Nat. B'k, Stamford, on acc.
 of int.,   .   .   .   .   .   .    75 80 '
 " And in ' quarterly statements of assets,' the following
item :
" '1887. Sept. 1. Mortgages due John A. Holmes, . $5,035.'

 " An examination of the entries in the book failed, and
nothing in the other evidence in the case served, to throw
any light upon these entries, or upon the nature of the trans-
action to which they pertained. The court therefore dis-
missed them from his mind, so far as the decision of the case
was concerned, and did not in any manner consider them in
arriving at his decision. After the case was decided the
court, in a conversation with counsel for the plaintiff, called
his attention to said entries as possibly affording some clue
to the solution of the question discussed by counsel, as to
the meaning of the interest reference in said receipt."
 The plaintiff claims, first, that these entries were not evi-
dence in the case at all, and second, that they were taken
into consideration by the court below and consciously or un-
consciously influenced its decision to his harm.
 Were the entries evidence in the case ? It appears that
attention was not called to them at all during the trial. For
aught that appears neither court, counsel nor parties during

the trial knew of their existence. In short, it would seem that if they became evidence at all they became such when the book was first laid in evidence, and merely by force of the fact that they were contained within its covers. This involves the claim that when the book was thus laid in evidence, as it is called, without objection, every entry of every kind within its covers necessarily became evidence in the case ; and this seems to be the view taken of the matter by the defendants, for in their brief they say—" The book was in evidence without objection, and the court had the right to consult any entry therein in determining the facts in issue."

Under the facts of this case we cannot assent to such a claim. It is founded upon this statement in the record :— " The defendants identified a certain book of accounts as the account book and the only account book kept by Mr. Milne, and as being wholly in his handwriting, and laid the same in evidence."

What does the phrase " laid the same in evidence," as here used, mean ? No more we think than that the book identified as Mr. Milne's account book, kept in his handwriting, was now before the court ready for use as the material source of such entries therein as should be subsequently offered in evidence. It meant no more in effect than is meant in every-day practice when a writing, to be offered in evidence subsequently, is identified and marked as an exhibit in advance of its being so offered. So all concerned seem to have understood the matter, and we know of no rule of law or of practice which requires us to give to this phrase under the circumstances of this case any more extended meaning.

Of course this act of laying the book in evidence might have been attended with the result now claimed by the defendants if the parties had so agreed or intended ; but it is not found, nor from the facts found can it be fairly inferred, that they did so intend, or that they so understood the matter ; and after all the question should be how did the parties understand the matter at the time.

The book covered several years of time, and presumably contained many entries of various kinds, some relevant per-

haps and some not, and it can hardly be presumed that the plaintiff, in entire ignorance of what these entries were, intended to admit them by not objecting to the book as such or by failing to ask at that time what entries would subsequently be offered in evidence.

The subsequent conduct of the court and of the parties clearly shows that the matter was not understood at the time as the plaintiff now claims that it was, for after the book was laid in the defendants call the attention of the court to certain specific entries, and thereupon the plaintiff objects to them, and the court hears the parties and over-rules the specific objections, precisely as if the entries were then being offered for the first time; and the defendants make no claim that the entries are already in the case, as would have been natural had they supposed they became evidence when the book was first laid in.

Subsequently also the trial judge seems not to have considered the entries here in question as in the case, for he says he dismissed them from his mind so far as the decision was concerned. In short, we think it clearly appears from the record that the contents of the book were not laid in evidence when the book was laid in, and from this it follows that the entries in question were not evidence in the case at all.

This brings us to the question whether the fact that the trial judge saw these entries and dealt with them in the manner stated on the record entitles the plaintiff to a new trial. We think the fairest way to deal with this question under the circumstances is to treat the case as we should one where evidence had been improperly admitted and, after the trial but before the decision, such evidence had been either expressly ruled out, or disregarded so far as the same can be done by the court. In such cases the question is, does it fairly and with reasonable certainty appear upon the record that the party complaining could not have been harmed by the action of the court? Unless it does so appear a new trial will ordinarily be granted. *Richmond* v. *Stahle*, 48 Conn., 22; *Buckingham's Appeal*, 60 Conn., 143.

In the case at bar, if we take the statement of the trial

judge as conclusive upon the question whether his decision was influenced at all by the entries in question, then it does clearly appear that the plaintiff was not harmed by the action of the court of which he here complains.

Now there can be no sort of doubt that the trial judge intended to, and did, so far as it is possible for any one to do such a thing, dismiss these entries from his mind and did not consider them in arriving at his decision, and that he was fully persuaded that he had succeeded in the attempt. This court, however, has in cases like this, with a good degree of uniformity, refused to accept such statements as conclusive, on the ground that "the operations of the human mind are so subtle, and the influences which affect it so difficult to be appreciated, that it is utterly improbable, not to say impossible," for the party making them to know whether the evidence influenced him or not; holding that all that such statements can mean is that the maker of them was unconscious of the influence. *Harris* v. *Town of Woodstock*, 27 Conn., 571; *Jacques* v. *Bridgeport Horse R. R. Co.*, 41 Conn., 66; *Borough of Norwalk* v. *Blanchard*, 56 Conn., 461. In view of these decisions, and others that might be cited from our own reports, and concurring as we do in the reasons therein given for declining to accept such statements as conclusive, we cannot accept the statement of the trial judge in this case as conclusive.

This being so, it follows that the question in each case of this kind must be determined by a consideration of the facts in the particular case bearing upon the question, there being no general rule applicable to all cases.

Now in the case at bar, although we do not think, in view of all the evidence in the case as it appears of record, that the receipt of April, 1888, was of such transcendent importance as the plaintiff now seems to claim, still it was an important piece of evidence in his favor. As matters stood at the close of the evidence a strong argument in favor of the plaintiff's contention might be drawn from it. The case was a somewhat close one, peculiar in some of its aspects, and its decision involved the consideration of questions upon which

the evidence would be rather evenly balanced. Any evidence therefore which in any degree, or at least in any essential degree, weakened the inference to be drawn from the receipt, would necessarily, or at least very probably, affect the result of the trial unfavorably to the plaintiff. Now the entries in question as they stand in the book, and as the court saw them without explanation or qualification, would we think tend to show, or at least to suggest some sort of an inference, that the word "interest" in the receipt did not or might not refer to the interest indorsed upon the note, but might refer to interest upon some other account. The trial judge appears to have regarded them "as possibly affording some clue to the solution of the question as to the meaning of the interest reference in said receipt."

Now it is manifest from the record that, to some extent at least, and for some purposes, the trial court did consider these entries. For how long a time the court had them under consideration does not appear.

Under all the circumstances we think it does not appear from the record with reasonable certainty that the plaintiff could not have been harmed by the action of the court below, and that the interests of justice will be promoted by granting a new trial.

There is error and a new trial is granted.

In this opinion CARPENTER, FENN and BALDWIN, Js., concurred; ANDREWS, C. J., concurred in the result, but was of opinion that the testimony of Ritch should not have been received.