THE NORMAN PRINTERS SUPPLY COMPANY *vs.* AVIE E. FORD ET AL.

Third Judicial District, Bridgeport, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

A defendant in replevin cannot require a declaration drawn in the statutory form (General Statutes, § 1058), to be made more specific by stating particularly the nature of the plaintiff's title and right of possession.

If words or signs customarily used by a business firm in keeping its books have a peculiar significance, such significance may be shown by parol, in any action in its favor in which the books may be admissible.

Norman Printers Supply Co. *v.* Ford.

A vendor's order-books, in which the terms of sale were entered in the ordinary course of business, are admissible against the vendee.

The defendant Ford held a written receipt from the plaintiff for $315 "on account of printing outfit," the price of which was not less than $355 nor more than $450. It appeared from the testimony of one of the plaintiff's witnesses that in the same year the order-book showed a dozen orders for supplies which were delivered on lease. *Held* that on cross-examination he might be asked what the amounts of these orders were, as his answer might tend to show that in no case of a lease had such a large payment as $315 ever been made on an order of not over $450; but that the exclusion of the question, and another of similar import, could not have been so prejudicial to the defendants as to justify setting aside the verdict on that ground alone.

When a question in a deposition is objected to as calling for hearsay, and the deponent later on in his examination admits that his answer thereto was hearsay, it should, when the deposition is read in court, be excluded.

The plaintiff claimed that all the assets of a partnership, of which the plaintiff corporation was the successor, including the supplies in question, had been turned over by the partnership to, and accepted by, the plaintiff. *Held* that a certificate of the directors to that effect, entered in the plaintiff's record-book, was merely a self-serving recital of past events and inadmissible as evidence of such transfer.

Ordinarily it is not necessary to specify wherein evidence, objected to as incompetent, is incompetent, nor what evidence could be offered that would be better.

The refusal to grant a nonsuit is not a ground of appeal.

Replevin is maintainable against several defendants, without a prior demand, where one of them obtained the chattels by a conditional sale under which the title remained in the plaintiff, and the others claim only under him.

The trial court may properly refuse a request to charge which is so framed as to disparage the testimony of a particular witness, or which requires dissection in order to comply with any portion of it which may be sound in law.

Where it is open to the jury to find that one of the defendants had never taken possession of any of the goods replevied, it is error for the trial court to direct the jury—after they have reported a verdict for the plaintiff "to retain said goods and to recover of defendants no damages "—that they must award " some damages " to the plaintiff.

The rule of court (p. 95, § 14) that the answer of counsel under oath to a sworn application to rectify an appeal shall specifically admit or deny each paragraph of such application is to be reasonably construed, and it cannot be assumed that eight months or more

after a trial counsel had such a distinct recollection of all the evidence and claims presented that he might not fairly answer some statements in regard to them in such an application by asserting that, as to them, he had no knowledge or information sufficient to form a belief.

Argued November 10th—decided December 16th, 1904.

ACTION of replevin, brought to the Court of Common Pleas in New Haven County and tried to the jury before *Bishop, J.;* verdict and judgment for the plaintiff, and appeal by the defendants.    *Error and new trial ordered.*

*Henry G. Newton* and *Ward Church*, for the appellants (defendants).

*George E. Beers*, for the appellee (plaintiff).

BALDWIN, J.   The motion by the defendants, that the plaintiff be required to make its declaration more specific by stating more particularly the nature of its title and right of possession, was properly denied.   The declaration was in the statutory form, and could not be treated as a complaint under the Practice Act.   General Statutes, §§ 607, 1058.

Certain of the articles replevied were described in the declaration as follows: "1 13×19 Geo. P. Gordon printing press, with power fixtures, 1 counter shaft, complete, including 1 shaft, 2 hangers, 2 collars, 8 driving pulleys, 2 cone pulleys, 1 Dennison electric motor, 1 main line shaft, complete, including 1 shaft, 2 hangers, 2 collars, 1 driving pulley, 1 counter shaft, complete, including 1 shaft, 2 hangers, 2 collars, 1 driving pulley, 2 cone pulleys, 1 8×12 B. F. Gordon printing press, complete, No. 6466."

The plaintiff, which is a corporation, claimed that a copartnership of the same name, to which it was a successor, had made a conditional sale of part of these articles to the defendant Ford, in 1895, under an oral agreement that the title should remain in it, until he had fully paid for them, which he had never done; and that it had delivered to him part of the articles replevied in 1897 on similar terms.

In support of this claim it introduced on the trial a page of the order-book of the copartnership, a book of original entry, with the testimony of one Norman, its president, who had been also a member of the copartnership, that the entries were copied in the ordinary course of business from order slips in his own handwriting. On this page was a description of certain of these articles, headed with the name of A. E. Ford & Co., under which the defendant Ford did business, and the words "on contract." These the witness testified had a well-defined meaning in the plaintiff's business, always denoting a conditional lease or sale.

The evidence was all admissible. The words "on contract" were an inseparable part of the entry, and it was as proper and as necessary to prove their meaning as, if a private cipher had been used, it would have been to explain the signification of that.

The whole order-book having been put in evidence, it appeared that a line had been drawn across most of the pages, but none across the page before mentioned. Testimony from the bookkeeper was thereupon, for similar reasons, properly received, that by a custom of the business, known to the defendant Ford, who was familiar with the books, the absence of a line on any page signified that the goods were sold on lease.

It was admitted that the defendant Ford held a written receipt from the copartnership, signed in its behalf by Norman, in 1895, when the first lot of articles was delivered, for $315 " on account of printing outfit," and that the price set on these articles was not less than $355. The plaintiff claimed the price to be $450.

Norman testified in chief that in the order-book of 1895 there were a dozen orders which were delivered on lease. On cross-examination he was asked by the defendants, what was the amount of these orders. This question was claimed on the ground that the answer would show that in no case of a lease had such a large payment on account been made on a bill of not over $450; but the court excluded it, and also a further question as to whether so large a payment

had in fact ever been made on the delivery of goods under a lease.

These questions were relevant to the issue, and it would have been proper to admit them. *Peck* v. *Pierce*, 63 Conn. 310, 314. They were adapted to elicit statements on which a legitimate argument could have been based in support of the defense set up. *Plumb* v. *Curtis*, 66 Conn. 154, 166. Nevertheless their exclusion is not necessarily ground for a new trial. The point to which they were directed was not to bring out any fact of substantial importance in relation to the issue. If admitted, the plaintiff might have asked the court to allow it to reinforce the direct testimony of the witness by introducing explanations as to why the copartnership had been content with small payments on each of the other orders. Cross-examination must have some limits both as to subject-matter and to time, and that in this instance it was stopped a little too soon can hardly have been of such prejudice to the defendants as would justify setting aside the verdict for this cause alone.

The plaintiff introduced in evidence the deposition of one Harmon, who had been the other member of the copartnership, in which he testified that the copartnership furnished the defendant Ford, in 1895, with the equipment of a printing office. The following questions and answers then appeared: "Q. 1. Upon what terms? A. Lease. Q. 2. What do you mean by lease? A. A contract, where the sale was protected by lease on the plant. Q. 3. Won't you state then, what the arrangement between the company and Mr. Ford was? A. I can't give the terms of the lease. The agreement was made with Mr. Norman. Q. 4. Was a written lease entered into, do you know? A. I think there was. Q. 5. Do you know about it of your own knowledge? A. I don't remember of having seen the contract." Objections were made and entered at the taking of the deposition to question 2, on the ground that if there was a lease, the lease was the best evidence; and to question 3, because it called for hearsay. On the trial objection was renewed to question 2, and an objection also taken to question

1, on the ground that the subsequent questions and answers showed that the answer must be hearsay; but both, together with the answers to them were admitted.

In this there was a material error.    The vital point in controversy was whether the articles replevied were sold outright, or on such conditions that the title remained in the vendors. Harmon was allowed to testify that the transaction was a contract in the nature of a lease, notwithstanding it appeared on the face of the deposition that the agreement was not made with him and that he could not state its terms.    If the witness had been present to testify, the court could have received these answers, on the assumption that he was speaking of what he knew; leaving it to the defendants to show the contrary, if they could, on cross-examination, or otherwise.    But when a question in a deposition is objected to as calling for hearsay, and in a subsequent part of the paper it appears, by the admission of the deponent, that the answer was hearsay, it should, when the deposition is read in court, be excluded.

The witness Norman having testified that all the assets of the partnership had been made over to the plaintiff by a written instrument which could not now be found, a page from the plaintiff's record-book was admitted in evidence, containing a certificate by a majority of the directors, in which it was recited that these assets had been turned over by the partnership and accepted by the corporation.    In this there was error.    Such an entry was the recital of a past transaction.    It was not an entry in a book of account, kept in regular course of commercial business.    It was simply a minute by a vendee of what he claimed to have obtained by his purchase, and what he claimed to have done with it. That the vendee was a corporation, and the minute was inserted in its record-book, gave it no more force than if it had been a note made by a natural person in a memorandum book. It was not an act contemporaneous with the transaction in question and naturally connected with it, but a mere self-serving narrative of past events.    2 Wigmore on Evidence, §§ 1074, 1526.

The objection taken to the admission of this evidence,

that it was incompetent, and that there was better evidence, was sufficient. It was not necessary to take up the time of the court by specifying why it was incompetent, nor what evidence could be offered that would be better.

The refusal of the court to grant a nonsuit was not reviewable by appeal. *Bennett* v. *Agricultural Ins. Co.*, 51 Conn. 504.

A prior demand was not necessary to support the action against all the defendants, if, as the plaintiff claimed, Ford procured the articles by a conditional sale under which the title remained in the vendors. *Brown* v. *Fitch*, 43 Conn. 512.

The defendant Smith claimed title to certain of the articles replevied, under a chattel mortgage from the defendant Ford, given in 1899, in which they were described as "the following articles of personal property now situated in my printing office, on the third floor of the Ford building, at No. 730 Chapel street, in said town, to wit: Two (2) Gordon printing presses, one (1) Dennison ¾ H. P. electric motor, one hundred and forty (140) fonts job printing type, one hundred and twenty-five cases for type, three (3) type frames, one lead cutter, one (1) mitering machine, one (1) Elm City card cutter, one (1) imposing stone and frame, one (1) Cutler's roll-top desk." The defendants admitted that Ford obtained one of these presses and the electric motor from the plaintiff in 1897, and the other articles mortgaged, except the desk, from the copartnership in 1895. The plaintiff claimed and offered evidence to prove that all the articles were used personally by Ford as a job printer; and that the presses could be operated either by hand or power, and were operated by him, with the aid of a man and boy, with occasional aid from others. The defendants claimed and offered evidence to prove that the 13×19 press was attached to the electric motor, and set up by the plaintiff in connection with it, to be run by electric power. The defendants asked the court to instruct the jury that the articles mortgaged were not exempt from attachment; and, no agreement for their conditional sale having been recorded

(in compliance with General Statutes, § 4864), were, as respects the mortgagees, to be deemed the absolute property of Ford, "even if Norman's testimony is accepted as true throughout, and it is considered that what he thinks was said was really said."

Error is not well assigned on the refusal to give this request. It was so framed as to disparage the testimony of Norman, and even if any portion of it were sound in law, the court was not bound to dissect it into parts, in order to comply with it to that extent. The same is true of the request next made, that this instruction should be given as to any of the articles which the court might deem to be exempt.

The only other exception taken to the instructions to the jury which, under the record as presented, is of sufficient merit to require discussion, is that, they having brought in a verdict "for the plaintiff to retain said goods and to recover of defendants no damages," the court returned them to a further consideration of the point of damages, with a direction to render a verdict for "some damages"; whereupon they returned a verdict awarding the plaintiff $50.

The defendant Smith claimed that he had never taken possession of any of the articles replevied. This claim the jury may have found true, and it was therefore error to direct them that he was liable for damages for their detention.

The evidence before the jury not being given in the record, we cannot consider the error assigned on the ground that the verdict was against the evidence.

An application, sworn to in conformity with § 14 of the rules of this court (Rules of Court, p. 95), to rectify the appeal, was made by the defendants, and the plaintiff's counsel filed an answer under oath. The rule requires that in such an answer each paragraph of the application shall be specifically admitted or denied, in whole or part. The plaintiff did this, in respect to some of the paragraphs. As to others, which alleged that there was no evidence offered

and no claim made as to certain points, the answer was that the affiant had no knowledge or information sufficient to form a belief. No depositions were offered in support of the application. It was not filed until October 12th, 1904. The trial had taken place in the preceding January. The rule in question is not to be construed as requiring the impossible. We cannot assume, in the face of the answer, that the counsel who made oath to it had a recollection of all the evidence and all the claims presented during a long trial, which took place more than eight months before, sufficiently distinct to enable them either to admit or deny all that was contained in the application. They were certainly not bound to be at the cost of procuring from the official stenographer a copy of his minutes, for the mere purpose of aiding the adverse party to lay the foundation of its appeal. The application, however, so far as it was admitted by the answer to be true, we have used to explain or supplement the finding of the trial court.

There is error and a new trial is ordered.

In this opinion the other judges concurred.