******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

# STATE OF CONNECTICUT *v.* JOEL ALEXANDER
## (SC 20316)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker and Keller, Js.

*Syllabus*

Convicted of felony murder, attempt to commit robbery in the first degree, conspiracy to commit robbery in the first degree, and carrying a pistol without a permit in connection with the shooting death of the victim, the defendant appealed to this court. Shortly after the shooting, the police brought the defendant to the police station, where he was advised of and waived his rights under *Miranda* v. *Arizona* (384 U.S. 436). During the interrogation of the defendant, he denied any involvement in the robbery or the murder of the victim but admitted that he was present at the scene and that he briefly had held a gun belonging to another individual, J, shortly before the shooting. The defendant elected to be tried on the felony murder charge by a three judge panel and by the presiding judge on the remaining counts. Prior to trial, defense counsel moved to suppress the video recording of the defendant's interrogation, but, because the court found the portion of the recording in which the defendant purportedly requested an attorney to be unintelligible, it denied the motion on the ground that the defendant had not made an unambiguous request for counsel. The panel ultimately found the defendant guilty of felony murder, and the presiding judge found the defendant guilty of the remaining charges. Before the defendant was sentenced, however, this court issued its decision in *State* v. *Purcell* (331 Conn. 318), which held, as a matter of state constitutional law, that, if a suspect makes an equivocal statement that arguably could be construed as a request for counsel, interrogation must cease except for narrow questions designed to clarify the suspect's desire for counsel. The defendant then filed a motion for a new trial on the basis of *Purcell.* After listening to the recording of the interrogation again, the trial court concluded that the defendant's remark "you got me . . . stop talking right now, I'm trying to get a lawyer" constituted an equivocal statement that arguably could be construed as a request for counsel and that any subsequent statements made by the defendant during the interrogation should have been suppressed under *Purcell.* Nonetheless, the panel determined that the improper admission of any subsequent statements was harmless with respect to the felony murder conviction because the panel had not considered the defendant's statements during the interrogation in determining his guilt and because the defendant's statements were not inculpatory insofar as he denied any involvement in the murder or the robbery. With respect to the defendant's conviction of both attempt and conspiracy to commit robbery in the first degree, the presiding judge likewise found the improper admission of the defendant's statements to be harmless because the presiding judge had not considered them in determining the defendant's guilt in connection with those crimes, they were cumulative of other evidence, and they did not implicate the defendant in the attempt to rob the victim. However, because the presiding judge had relied on the defendant's statements, made during the interrogation, that he temporarily had possessed a handgun as evidence supporting the defendant's conviction of carrying a pistol without a permit, the judge vacated the defendant's conviction of that offense and ordered a new trial on that charge only. Thus, the trial court denied the defendant's motion for a new trial, except with respect to his conviction of carrying a pistol without a permit. Thereafter, the defendant appealed from the judgment of conviction to this court. *Held* that, even if this court assumed that the defendant's statements during the interrogation were improperly admitted into evidence in violation of *Purcell,* the error was harmless beyond a reasonable doubt, and, accordingly, the trial court properly denied the defendant's motion for a new trial with respect to his conviction of felony murder, attempt to commit robbery in the first degree, and conspiracy to commit robbery in the first degree: in determining the defendant's guilt, the panel and

the presiding judge rejected the version of events proffered by the defendant in his statements made during his interrogation, namely, that he was an innocent bystander who happened to be walking by the scene immediately before he saw J shoot the victim, and, instead, relied on and credited other evidence adduced at trial, including surveillance footage and the testimony of various witnesses, in finding that the victim was shot in the course of, and in furtherance of, an attempted robbery in which the defendant was a participant; moreover, viewed in the context of the entire record, it was clear that the defendant did not implicate himself in the shooting or the robbery of the victim in his statements that he made during the interrogation, his statements were not important to the state's case, and they did not in any respect affect the convictions at issue, especially in light of the panel's and the presiding judge's remarks in the memorandum of decision on the defendant's new trial motion that the defendant's statements had no effect on their decisions, the fact that the memorandum of decision contained no mention or reference to the defendant's statements to the police, and the fact that the inculpatory portion of the defendant's interrogation, in which the defendant admitted to being at the scene of the shooting and possessing J's gun, was cumulative of other properly admitted evidence; furthermore, even if this court could consider the impact that a *Purcell* violation had on the conduct of the defense at trial, the defendant's argument that he might have raised the statutory (§ 53a-54c) affirmative defense to felony murder but for the improper admission of his statements was unavailing, as there was no evidence in the record from which the fact finder could rationally conclude that the defendant had proven by a fair preponderance the existence of the elements to that defense, and, even if such a defense had been presented, it would have been rejected by the fact finder as inconsistent with the testimony of the witnesses credited by the court that the defendant possessed a gun on the day of the shooting and aided in the commission of the robbery that resulted in the murder of the victim.

Argued January 20—officially released June 7, 2022

*Procedural History*

Substitute information charging the defendant with felony murder, attempt to commit robbery in the first degree, conspiracy to commit robbery in the first degree, and carrying a pistol without a permit, brought to the Superior Court in the judicial district of New Haven, where the felony murder charge was tried to a three judge court, *Alander* and *Cradle, Js.*, and *Hon. Jon C. Blue*, judge trial referee, and the remaining charges were tried to the court, *Alander, J.*; finding of guilty; thereafter, the court, *Alander, J.*, vacated the defendant's conviction of carrying a pistol without a permit and ordered a new trial on that charge; subsequently, the court, *Alander, J.*, rendered judgment of guilty in accordance with the finding, from which the defendant appealed to this court. *Affirmed.*

*Todd L. Bussert*, with whom, on the brief, was *Erica A. Barber*, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, chief state's attorney, and *Lisa M. D'Angelo*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

ECKER, J. Following a bench trial in early 2019, the defendant, Joel Alexander, was convicted of felony murder in violation of General Statutes (Rev. to 2013) § 53a-54c,[1] attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (2) and 53a-49 (a) (2), conspiracy to commit robbery in the first degree in violation of § 53a-134 (a) (2) and General Statutes § 53a-48, and carrying a pistol without a permit in violation of General Statutes (Rev. to 2013) § 29-35 (a).[2] After the defendant was found guilty, but before sentencing, this court decided *State* v. *Purcell*, 331 Conn. 318, 203 A.3d 542 (2019), which held, under our state constitution, that "if a suspect makes an equivocal statement that arguably can be construed as a request for counsel, interrogation must cease except for narrow questions designed to clarify the earlier statement and the suspect's desire for counsel." (Internal quotation marks omitted.) Id., 362. The defendant sought a new trial based on our holding in *Purcell*, on the ground that the state's evidence at trial had included a video-recorded statement in which the defendant had made an equivocal request for counsel. The trial court agreed with the defendant's *Purcell* claim but, with the exception of a single count of conviction,[3] concluded that the error was harmless. We affirm the judgment.

The trial court found the following facts. On January 20, 2014, at approximately 1 p.m., Damarquis Gray shot and killed the victim, Durell Law, in the parking lot of the Fairway Apartments complex in New Haven during the course of an attempted robbery.[4] Earlier that day, the defendant was on the porch of Gray's home at 12 Bouchet Lane in New Haven with several others, including Gray, Thomaine Riddick, Arik Fraser, Anton Hall, and Delano Lawrence. Hall overheard the defendant suggest that the group should rob the victim, who apparently had an iPhone and money on him. The defendant indicated that he possessed a " 'baby nine,' " which Hall interpreted to mean a nine millimeter handgun. The defendant, Gray, Riddick, Fraser, Hall, and Lawrence eventually walked toward the apartment complex.

Sometime before the shooting took place, Ameia Cato, who knew the defendant, saw him on the Eastern Street side of the apartment complex in possession of a handgun. Cato observed the defendant pass the gun to Fraser, who was standing next to him, and overheard the defendant say to Fraser, " '[t]hat boy gonna get clapped.' "

The victim entered the parking lot shortly before the shooting, accompanied by two companions. Others present at the scene included the defendant, Gray, Fraser, Riddick, Hall, Lawrence, and Ericka Gomez. The defendant passed a gun to Gray and asked, " '[a]re you ready,' " to which Gray responded, " '[l]et's go . . . .' "

The defendant then pointed at the victim and exclaimed, " '[l]et's go do it.' " The defendant told the victim to " '[r]un these sneakers,' " an order meaning to take them off. After the victim responded that he was not going to take off his sneakers, the defendant, Gray, Riddick, and Fraser surrounded the victim, and at least one of them reached into the victim's pockets. Riddick punched the victim, the victim punched or pushed Gray, and, when the victim turned to run away, Gray fatally shot the victim in the back.

Approximately two hours later, the police brought the defendant to the police station for interrogation. The defendant was a suspect in the shooting and was placed in a holding cell. At about 2 a.m. the next day, the defendant was taken to an interview room, where he was advised of his *Miranda*[5] rights at the outset of the interrogation, both orally and in writing. He then signed a written waiver of rights. During the course of the interrogation, which was video-recorded, the defendant denied any involvement in the robbery or murder of the victim but admitted that he was present at the scene of the shooting and that, shortly before the victim was shot, he briefly held a gun that belonged to Daryl Johnson.

The defendant thereafter was arrested and charged with felony murder, attempt to commit robbery in the first degree, conspiracy to commit robbery in the first degree, and carrying a pistol without a permit. Prior to trial, the defendant filed a motion to suppress the video-recorded statement that he had made to the police. The defendant claimed, in relevant part, that "the statements made during his police interview should be suppressed because the police failed to immediately cease their questioning when he made an unambiguous request for the assistance of an attorney."[6] The precise words used by the defendant to invoke his right to counsel are difficult to hear on the recording. According to the transcript produced for trial, the defendant stated, after a period of preliminary questioning, "[y]ou got me . . . stop talking right now so I can get a lawyer, 'cause I'm telling you the truth." Although the parties agreed that the transcript was not completely accurate, they disagreed about what the defendant actually said. The defendant asserted that he said, " '[y]ou got me wanting to stop talking right now so I can get a lawyer, 'cause I'm telling you the truth,' " whereas the state contended that the defendant stated, " '[y]ou got me wanting to stop talking right now trying to get a lawyer, 'cause I'm telling you the truth.' " The trial court—at least at this pretrial stage—declared that it was unable to understand the defendant's exact words. It explained that it had "carefully listened to the disputed portion of the defendant's interview multiple times. [The court has] listened to it with and without headphones. [It] find[s] that the transcript of that segment of the interview is not accurate. Rather, the defendant's statement regarding

a lawyer is unintelligible. [The interrogating detective] speaks at the same time as the defendant, and [the court is] unable to discern precisely what the defendant said." Because the defendant had not "made an unambiguous request for the assistance of an attorney" under *Davis* v. *United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994), the trial court denied the defendant's motion to suppress. Accordingly, the video recording of the defendant's interview with the police was admitted into evidence at trial.

After the completion of the trial, the panel issued a written memorandum of decision finding the defendant guilty of felony murder. The presiding judge also issued a written decision finding the defendant guilty of criminal attempt to commit robbery in the first degree, conspiracy to commit robbery in the first degree, and carrying a pistol without a permit.

After the defendant was found guilty, but before he was sentenced, this court issued its decision in *State* v. *Purcell*, supra, 331 Conn. 318, in which we held for the first time that the Connecticut constitution provides greater protection for a criminal defendant's *Miranda* rights than the federal constitution. See id., 359. Pursuant to *Purcell*, "if a suspect makes an equivocal statement that arguably can be construed as a request for counsel, interrogation must cease except for narrow questions designed to clarify the earlier statement and the suspect's desire for counsel." (Internal quotation marks omitted.) Id., 362. The trial court sua sponte ordered the parties to file supplemental briefs "addressing the issue of what effect, if any . . . *Purcell* has on [its] decision . . . denying the defendant's motion to suppress his [video-recorded] statement to the police."

Following the submission of the parties' supplemental briefs and oral argument, the trial court issued a memorandum of decision addressing the *Purcell* issue. The trial court explained that the judges had "again listened to the relevant portion of the defendant's [video-recorded] statement, this time on a different computer." After listening to the recording again, the trial court was "able to ascertain the content of the defendant's statement concerning his request for a lawyer." Specifically, the trial court found "that the defendant said, '[y]ou got me . . . stop talking right now, I'm trying to get a lawyer . . . .'" The trial court concluded that, "[a]t the very least, this statement by the defendant is an equivocal statement that arguably can be construed as a request for counsel, and, pursuant to . . . *Purcell*, the interrogation should have ceased. . . . [Because] the police continued to interrogate the defendant, his further statements should have been suppressed." (Citation omitted.) Because the defendant's video-recorded statement improperly was admitted into evidence, the trial court considered whether the defendant was entitled to a new trial.[7]

With respect to the defendant's felony murder conviction, the panel determined that "[t]he record of the trial fairly and with reasonable certainty establishe[d] that the defendant was not harmed by the erroneous admission of his [video-recorded] statement." The panel explained that it "did not consider any of the statements made by the defendant during his interview with the police . . . in determining the defendant's guilt on the felony murder charge." Instead, the panel explicitly relied on "the testimony of . . . Hall and . . . Gomez and the statements of . . . Cato as support for the conviction." Additionally, the panel concluded that "the statements that the defendant made during his interview were not harmful with respect to [the] felony murder [conviction]" because, in his statement, "the defendant repeatedly denied that he had any involvement in any attempt to rob [the victim] or that he shot [the victim]. Rather, he assert[ed] that he saw . . . Johnson,[8] who evidence showed was present at the scene of the shooting, shoot [the victim] with a firearm. The only admission that the defendant made that was in any way inculpatory was that, shortly before the shooting, Johnson showed him his handgun, which the defendant temporarily held before returning it to Johnson. There was no evidence submitted at trial that . . . Johnson was the shooter or that Johnson's handgun was the murder weapon. Nor was there any evidence that Johnson attempted to rob [the victim]. Moreover, the defendant's admission that he held a handgun was merely cumulative. Evidence was admitted at trial, through the statements of . . . Cato, that the defendant at least temporarily possessed a firearm shortly before the murder." (Footnote altered.) Accordingly, the panel denied the defendant's request for a new trial on the charge of felony murder.

In a separate section of the memorandum of decision, the presiding judge addressed whether the admission of the defendant's video-recorded statement was harmful with respect to the remaining crimes of conviction. The presiding judge concluded that, as to the defendant's conviction of attempt to commit robbery in the first degree and conspiracy to commit robbery in the first degree, "the record fairly and with reasonable certainty establishes that the defendant was not harmed by the improper admission of his [video-recorded] statement." Specifically, like the panel, the presiding judge "did not consider any of the statements made by the defendant [during] his interview in determining his guilt for those crimes" and concluded that "the defendant's statements during his police interview were not injurious" because they were cumulative and did not implicate the defendant in the attempt to rob the victim. Accordingly, the presiding judge denied the defendant's request for a new trial on the charges of attempt to commit robbery and conspiracy to commit robbery.

The presiding judge arrived at a different conclusion, however, with respect to the defendant's conviction of carrying a pistol without a permit. The presiding judge explained that he had "explicitly rel[ied] on the defendant's statements during his police interview that he temporarily possessed a handgun as evidence supporting his conviction of carrying a pistol without a permit. Also, the defendant's admission that he temporarily possessed . . . Johnson's firearm was inculpatory and tantamount to a confession." Because the presiding judge had "relied on the defendant's highly prejudicial admission that he possessed a firearm," he vacated the defendant's conviction of carrying a pistol without a permit and ordered a new trial on that charge.

The panel subsequently sentenced the defendant to thirty-five years of incarceration for the crime of felony murder. The presiding judge imposed concurrent sentences of fifteen years each for the crimes of attempt to commit robbery in the first degree and conspiracy to commit robbery in the first degree, for a total effective sentence of thirty-five years of incarceration. This appeal followed.[9]

On appeal, the defendant claims that the trial court erred in denying his motion for a new trial because the improper admission of his video-recorded statement was not harmless beyond a reasonable doubt. Specifically, the defendant contends that (1) only an appellate court can conduct a harmless error analysis, (2) the improper admission of the video-recorded statement tainted the entire proceeding and impacted defense counsel's trial strategy, and (3) the panel and the presiding judge applied the wrong standard of review to arrive at their conclusions regarding harm. The state does not dispute that the defendant's statement "[y]ou got me . . . stop talking right now, I'm trying to get a lawyer" was an ambiguous statement that arguably could be construed as a request for counsel under *Purcell*. The state claims, however, that the trial court correctly determined that the admission of the defendant's video-recorded statement was harmless beyond a reasonable doubt and, therefore, that a new trial is not required. Alternatively, the state claims that no *Purcell* violation occurred because the defendant effectively retracted his equivocal invocation of his right to counsel moments later when he stated that he was speaking to the police "without a lawyer 'cause I know I'm telling the truth." We need not address the state's alternative ground for affirmance because we conclude that, if a *Purcell* violation occurred and the defendant's video-recorded statement improperly was admitted into evidence, the error was harmless beyond a reasonable doubt.

"If statements taken in violation of *Miranda* are admitted into evidence during a trial, their admission must be reviewed in light of the harmless error doctrine. . . . When an [evidentiary] impropriety is of constitu-

tional proportions, the state bears the burden of proving that the error was harmless beyond a reasonable doubt. . . . [W]e must examine the impact of the evidence on the trier of fact and the result of the trial. . . . If the evidence may have had a tendency to influence the judgment of the jury, it cannot be considered harmless. . . . That determination must be made in light of the entire record [including the strength of the state's case without the evidence admitted in error]. . . . Whether the error was harmless depends on a number of factors, such as the importance of the evidence to the state's case, whether the evidence was cumulative of properly admitted evidence, the presence or absence of corroborating evidence, and, of course, the overall strength of the state's case." (Citation omitted; internal quotation marks omitted.) *State* v. *Culbreath,* 340 Conn. 167, 191– 92, 263 A.3d 350 (2021); see *Chapman* v. *California,* 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) (evidentiary error that implicates constitutional rights is subject to harmless error analysis).

This case was tried to a court, not a jury, and our harmless error analysis is facilitated substantially by the express findings contained in the memorandum of decision by which the panel and presiding judge returned their ultimate finding of guilt.[10] From those findings, viewed in the context of the entire record, it is clear to us that the defendant's video-recorded statement did not implicate the defendant in the shooting or robbery of the victim, was not important to the state's case, and did not in any respect affect the convictions at issue. Indeed, the defendant's version of events was inconsistent with the facts found by the trial court. As such, neither the panel nor the presiding judge credited or relied on the defendant's video-recorded statement to reach the respective findings of guilt.

In conducting a harmless error analysis, the dispositive issue is "the impact of the [improperly admitted] evidence on the trier of fact and the result of the trial." (Internal quotation marks omitted.) *State* v. *Armadore,* 338 Conn. 407, 437, 258 A.3d 601 (2021). According to the defendant's version of events, he was walking near the apartment complex with his cousin, Fraser, prior to the shooting. The defendant and Fraser encountered Johnson, who told them that "it's about to get real" and that he had "just copped some wavy shit." Johnson then displayed a gun, which he handed to the defendant. The defendant briefly held the gun before handing it over to Fraser. The defendant instructed Fraser to return the gun to Johnson, which Fraser did. Realizing that trouble was imminent, the defendant and Fraser left the scene. As he was leaving, the defendant saw Johnson run up to the victim. The victim punched Johnson in the face, and Johnson shot the victim.

The defendant's narrative is contrary to the facts found by the trial court in the memorandum of decision

adjudicating his guilt. According to the defendant's version of events, he was an innocent bystander who happened to be walking by the scene immediately prior to the shooting. In the defendant's video-recorded statement, there was no attempted robbery of the victim, no conspiracy to rob the victim, and Gray was not the shooter. Instead, Johnson shot the victim in the midst of an unanticipated physical altercation, in which the defendant played no part.

The panel and the presiding judge rejected the defendant's version of events and relied on other evidence adduced by the state to conclude that Gray shot the victim in the course of, and in furtherance of, an attempted robbery in which the defendant was a participant. Specifically, in arriving at their finding of guilt with respect to the crimes of felony murder, attempt to commit robbery, and conspiracy to commit robbery, the panel and the presiding judge explicitly credited the testimony of Hall, Gomez, and Cato. According to Hall, the defendant was in possession of a nine millimeter handgun, suggested to others that they should rob the victim, and eventually passed the gun to Gray for this purpose. Gomez testified that she had heard the defendant tell the victim to " '[r]un these sneakers,' " meaning to give them up. Cato's prior statement placing the defendant at the scene of the crime and in possession of a pistol, which he handed to Fraser while stating, " '[t]hat boy gonna get clapped,' " also was admitted into evidence. The testimony of Hall, Gomez, and Cato[11] was corroborated by surveillance video footage, which depicted the defendant in proximity to the scene of the crime at the time of the shooting. The memorandum of decision containing the court's legal analysis and findings makes no mention or reference whatsoever to the defendant's statement to the police.

We recognize that the defendant's video-recorded statement was inculpatory to the extent that it placed him near the scene of the shooting at the time of the victim's murder and briefly in possession of a pistol. This evidence was cumulative of other properly admitted evidence, however, such as the testimony of Hall, Gomez, and Cato, as well as the surveillance video footage, all of which placed the defendant near the scene of the shooting and/or briefly in possession of a handgun. Indeed, during closing argument, defense counsel acknowledged that the evidence established that "[the defendant] was present" at the scene but argued that he neither "took [any] part nor had any knowledge of a robbery of [the victim]." Given that the inculpatory portion of the defendant's video-recorded statement was cumulative of other properly admitted evidence, we conclude that its improper admission was harmless beyond a reasonable doubt. See *United States v. Liapina*, 532 Fed. Appx. 362, 364–65 (4th Cir. 2013) (concluding that any error District Court may have committed during bench trial by declining to suppress defen-

dant's postarrest statements on ground that they were made after defendant invoked his right to counsel was harmless beyond reasonable doubt because they were duplicative of other evidence); *State* v. *Wilson*, 308 Conn. 412, 427, 64 A.3d 91 (2013) (concluding that improper admission of statement was harmless, at least in part because challenged statement was cumulative of properly admitted evidence); *State* v. *Smith*, 289 Conn. 598, 628–30, 960 A.2d 993 (2008) (same).

We have conducted our harmless error analysis and arrived at our conclusion of harmlessness on the basis of our independent review of the record. We note that our conclusion is consistent in all respects with the panel's and the presiding judge's rulings in connection with the defendant's motion for a new trial. The panel denied the defendant's motion for a new trial on the ground that it had "not consider[ed] any of the statements made by the defendant during his interview with the police . . . in determining the defendant's guilt on the felony murder charge." Similarly, the presiding judge denied the defendant's motion, in relevant part, because he had "not consider[ed] any of the statements made by the defendant [during] his interview in determining his guilt" with respect to the attempt to commit robbery and conspiracy to commit robbery charges. The panel's and the presiding judge's "insistent remarks" that the defendant's "statements had no effect on [their] decision[s]" reinforce our confidence in our own conclusion that the improper admission of the defendant's video-recorded statement had no impact on the guilty findings at issue.[12] *United States* v. *Lee*, 618 F.3d 667, 674 (7th Cir. 2010); see id. (observing that error was harmless "in light of the judge's insistent remarks" that "[the defendant's] incriminating statements had no effect on the judge's decision"); *United States* v. *Miller*, 800 F.2d 129, 136 (7th Cir. 1986) (observing that, in bench trial in which "[t]he trial court specifically stated [that] it would disregard the disputed evidence from its evaluation of [the] defendant's guilt . . . despite any court's 'many human frailties,' we must take that statement as true").

Lastly, the defendant claims that the improperly admitted evidence "tainted the entire trial proceeding and impacted the defense" because "defense counsel can and does pursue myriad different strategies depending on whether . . . a defendant's statement is admitted at trial."[13] In support of this claim, the defendant does not cite any Connecticut case law but, instead, relies on *Hart* v. *Attorney General*, 323 F.3d 884 (11th Cir.), cert. denied sub nom. *Crist* v. *Hart*, 540 U.S. 1069, 124 S. Ct. 813, 157 L. Ed. 2d 733 (2003), a habeas case in which the United States Court of Appeals for the Eleventh Circuit held that the admission of statements obtained in violation of *Miranda* was not harmless, in pertinent part, because it "had a significant effect on the conduct of the defense." Id., 896. The

defendant in the present case argues that he might have raised an affirmative defense under § 53a-54c[14] but for the improper admission of his video-recorded statement. Assuming without deciding that we may consider the impact that a *Purcell* violation had on the conduct of the defense at trial, we nonetheless are convinced that no such claim plausibly can be made in this case. There was no evidence in the record "from which the [fact finder] could rationally conclude that [the defendant] had proved by a fair preponderance the existence of each of the four elements [of the affirmative defense] set forth in § 53a-54c." *State* v. *Bonds*, 172 Conn. App. 108, 136, 158 A.3d 826, cert. denied, 326 Conn. 907, 163 A.3d 1206 (2017); see id., 138 (defendant failed to present sufficient evidence to support affirmative defense under § 53a-54c in part because his arguments "operate[d] as mere challenges to the state's burden of proving its case and . . . such arguments cannot be used as a substitute for affirmative evidence"). We also agree with the state that, even if such a defense had been presented, it would have been rejected by the fact finder as inconsistent with the testimony of Hall, Gomez, and Cato, which was found to be credible, that the defendant was "in possession of a gun on the day of the murder" and "aided in the commission of the robbery that resulted in the murder." We are confident that the improper admission of the defendant's video-recorded statement did not impact his theory of defense or the outcome of the trial.

For the foregoing reasons, we conclude that the improper admission of the defendant's video-recorded statement was harmless beyond a reasonable doubt and that the trial court properly denied the defendant's motion for a new trial with respect to his conviction of felony murder, attempt to commit robbery in the first degree, and conspiracy to commit robbery in the first degree.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] Hereinafter, unless otherwise indicated, all references to § 53a-54c in this opinion are to the 2013 revision of the statute.

[2] The defendant elected a trial on the felony murder charge before a three judge court, *Alander* and *Cradle, Js.*, and *Hon. Jon C. Blue*, judge trial referee. See General Statutes § 54-82 (a) and (b). The remaining counts were tried to the presiding judge of the panel, *Alander, J.* The various decisions of the three judge panel and the presiding judge that are the subject of this appeal were made in a series of written memoranda of decision, which were organized in a manner that allows us readily to distinguish among three categories of rulings: (1) those that relate to all counts, authored by all three trial judges, (2) those that relate solely to the felony murder count, also authored by all three judges, and (3) those that relate solely to any of the counts other than the felony murder count, authored by Judge Alander only. Hereinafter, all references in this opinion to the panel are to the three judge court. All references to the presiding judge are to Judge Alander. All references to the trial court are to the panel and the presiding judge, collectively.

[3] The presiding judge vacated the conviction of carrying a pistol without a permit. The defendant raised no issue in the present appeal regarding that count.

[4] We affirmed Gray's conviction of felony murder in *State* v. *Gray*, 342 Conn. 657, 691, 271 A.3d 101 (2022).

[5] *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[6] The defendant also claimed that his statements to the police were not voluntary because "he was detained for eleven hours before being interviewed, [he] was interviewed over a span exceeding three hours, he was interviewed by multiple detectives, and he was placed in a cold setting, thereby creating a hostile environment." The trial court rejected this claim, concluding, on the basis of "the totality of the circumstances . . . that the state has proven by a preponderance of the evidence that the defendant knowingly, voluntarily and intelligently waived his *Miranda* rights." This conclusion is not at issue in the present appeal.

[7] In light of the improper admission of the defendant's video-recorded statement, the defendant requested a mistrial. The trial court interpreted the defendant's request for a mistrial "as, in essence, a request for a new trial." The defendant does not challenge the trial court's characterization of his request.

[8] Although "the defendant identified the person who he claimed shot [the victim] simply as 'Daryl,' Daryl was subsequently identified at trial as Daryl Johnson."

[9] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b) (3).

[10] The defendant claims that the trial court incorrectly concluded that the admission of his video-recorded statement was harmless because "it was improper for the trial court to apply to its own deliberations and [finding of guilt] a legal standard that has developed and been applied in the context of appeals." Even if the trial court's "post hoc [harmless error] review was appropriate," the defendant further argues that "the court applied the wrong standard [of review]" to assess harm because it applied the "reasonable certainty" standard from *Peck* v. *Pierce*, 63 Conn. 310, 319, 28 A. 524 (1893), rather than the harmless beyond a reasonable doubt standard applicable to constitutional violations. See, e.g., *State* v. *Culbreath*, supra, 340 Conn. 191–92. We need not address these claims because we have conducted our own scrupulous independent review of the record and have determined, as an appellate court applying the correct standard of review, that the improper admission of the defendant's video-recorded statement was harmless beyond a reasonable doubt.

[11] The defendant claims that the state's case was "extremely weak" because there was a lack of physical evidence connecting him to the robbery and murder of the victim and because the state's young witnesses provided "conflicting accounts" of the shooting. (Emphasis omitted.) "It is well established, however, that a lack of physical evidence does not necessarily equate to a weak case." *State* v. *Ayala*, 333 Conn. 225, 236, 215 A.3d 116 (2019). The state's case was supported by the testimony of multiple witnesses, who testified that the defendant provided a gun to Gray in order to rob the victim. Although the testimony of the state's witnesses differed with respect to some minor details, such as the color of the gun used in the commission of the crimes, the essential testimony regarding the defendant's participation in the crimes was consistent. With respect to the credibility of the witnesses more generally, the trier of fact "is in the best position to make such judgments." *State* v. *Thompson*, 305 Conn. 412, 437, 45 A.3d 605 (2012), cert. denied, 568 U.S. 1146, 133 S. Ct. 988, 184 L. Ed. 2d 767 (2013); see, e.g., *State* v. *Ayala*, supra, 240 ("we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude" (internal quotation marks omitted)). The trial court found the state's witnesses to be credible, and we will not second-guess that determination on appeal, particularly when the improperly admitted evidence did not relate to those credibility determinations. Cf. *State* v. *Fernando V.*, 331 Conn. 201, 223–24, 202 A.3d 350 (2019) ("[when] credibility is an issue and, thus, the jury's assessment of who is telling the truth is critical, an error affecting the jury's ability to assess a [witness'] credibility is not harmless error" (internal quotation marks omitted)).

[12] The accuracy of the presiding judge's assessment of the impact that the improperly admitted evidence had on his guilty verdict is underscored by the presiding judge's determination that "[t]he conviction [of] carrying a pistol or revolver without a permit is a very different matter necessitating a different result. In contrast to the defendant's conviction on the other three charges, [the presiding judge] did explicitly rely on the defendant's statements during his police interview that he temporarily possessed a handgun as evidence supporting his conviction [of] carrying a pistol without

a permit. Also, the defendant's admission that he temporarily possessed . . . Johnson's firearm was inculpatory and tantamount to a confession." Accordingly, the presiding judge vacated the defendant's conviction of carrying a pistol without a permit and ordered a new trial on that charge.

[13] We reject as meritless the defendant's claim that the improper admission of his video-recorded statement constituted structural error not subject to harmless error review. "Structural [error] cases defy analysis by harmless error standards because the entire conduct of the trial, from beginning to end, is obviously affected . . . . These cases contain a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." (Internal quotation marks omitted.) *State* v. *Lopez*, 271 Conn. 724, 733, 859 A.2d 898 (2004). It is well established that the improper admission into evidence of a statement procured in violation of a defendant's *Miranda* rights is a trial error subject to harmless error analysis. See, e.g., *State* v. *Culbreath*, supra, 340 Conn. 191–200 (analyzing *Purcell* violation for harmless error); *State* v. *Purcell*, supra, 331 Conn. 363 (recognizing that violation of prophylactic rule adopted under Connecticut constitution is subject to review for harmless error); see also *Arizona* v. *Fulminante*, 499 U.S. 279, 310, 111 S. Ct. 1246, 113 L. Ed. 2d 302 (1991) (concluding that improper admission of involuntary confession is trial error subject to harmless error analysis).

[14] To present an affirmative defense under § 53a-54c, the defendant was required to establish by a preponderance of the evidence that he "(1) [d]id not commit the homicidal act or in any way solicit, request, command, importune, cause or aid the commission thereof; and (2) was not armed with a deadly weapon, or any dangerous instrument; and (3) had no reasonable ground to believe that any other participant was armed with such a weapon or instrument; and (4) had no reasonable ground to believe that any other participant intended to engage in conduct likely to result in death or serious physical injury." General Statutes (Rev. to 2013) § 53a-54c; see *State* v. *Person*, 236 Conn. 342, 353, 673 A.2d 463 (1996) ("the defendant bears the burden of proof of an affirmative defense" under § 53a-54c and may pursue such defense "only if there is sufficient evidence for a rational [fact finder] to find that all the elements of the defense are established by a preponderance of the evidence").

————————————————————